UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

RICHARD KULICK,    :

    :

    Plaintiff,    :   **COMPLAINT**

    :

    -against-    :   No. 1:20-cv-3582

    :

GAMMA REAL ESTATE LLC, GRE JV SLP LLC,    :

GAMMA FUNDING SPECIAL LIMITED PARTNER    :   **JURY TRIAL DEMANDED**

LLC, JV MANAGEMENT LLC, N. RICHARD    :

KALIKOW, JONATHAN KALIKOW, JOHN ILLUZZI,    :

and VAN NGUYEN,    :

    :

    Defendants.    :

------------------------------------------------------------------------ x

Plaintiff Richard Kulick ("Kulick" or "Plaintiff"), by his undersigned counsel, alleges against defendants Gamma Real Estate LLC ("GRE"), GRE JV SLP LLC ("SLP"), Gamma Funding Special Limited Partner LLC ("GF Limited Partner"), JV Management LLC ("JV Management"), N. Richard Kalikow ("Richard Kalikow"), Jonathan Kalikow ("Jon Kalikow"), John Illuzzi ("Illuzzi"), and Van Nguyen ("Nguyen") (collectively, the "Defendants" or "Gamma") as follows:

## NATURE OF THE ACTION

1.    This action involves Gamma's attempt to deprive Kulick of his share of carried interest income generated from a portfolio of real estate deals, which vested upon his withdrawal from Gamma under the clear and unequivocal terms of the agreement governing the parties' relationship. As Gamma's principals confirmed repeatedly before Kulick's negotiated departure date of March 31, 2020, Kulick's non-Cause withdrawal from SLP entitled him to retain his Class C Membership Interests under the GRE JV SLP LLC Agreement (the "LLC Agreement"). These Class C Membership Interests, which entitled Kulick to 12.5% of SLP's Carried Interest Income,

were "automatically [] converted into an Economic Interest" upon his withdrawal on March 31, 2020, under the express terms of Section 8.1(c) of the LLC Agreement. This Economic Interest and those described herein are currently worth in excess of $10 million.

2. On April 13, 2020 – just two days before a Carried Interest Income payment was due to be made – counsel for Gamma sent a letter to Kulick that attempted to rewrite history. Ignoring both the negotiated terms of Kulick's withdrawal from SLP and the clear language of the LLC Agreement, Gamma's letter falsely claimed that Kulick had "wrongfully used, disclosed, and took the Companies' highly confidential, proprietary and/or trade secret information" during his employment and belatedly asserted, for the first time, that Gamma instead had terminated Kulick for Cause. On the basis of these objectively false assertions, Gamma's letter purported to retroactively terminate Kulick's Class C Membership Interests – claiming to "redeem" these multi-million-dollar interests for "the price of $0.01."

3. Gamma's belated attempt to concoct baseless allegations of misconduct weeks after Kulick's negotiated March 31 departure represents a shamelessly transparent ploy to usurp Kulick's 12.5% share of SLP's Carried Interest Income Economic Interest, to which he is entitled under the LLC Agreement.

4. Gamma's misconduct also ignores the reality that, notwithstanding its sham "termination" of Kulick's Economic Interest in SLP, Kulick remains a member or managing member of entities controlling over a dozen properties in Gamma's multifamily real estate portfolio and retains his share of the associated economic interests. Critically, Kulick was so central to the structuring of these deals that he is the guarantor on many of the loans financing the properties. In violation of their fiduciary duties, defendants Richard Kalikow, Jon Kalikow, Illuzzi

and Nguyen intentionally have withheld information relating to these projects from Kulick – effectively leaving Kulick liable on loans, while depriving him of his economic share of the deals.

5. Kulick brings this action to recover the damages caused by Gamma's wrongful acts, and herein asserts claims for breach of contract, breach of fiduciary duty, conversion, unjust enrichment and equitable accounting. Kulick also seeks a declaratory judgment confirming his contractual entitlement to his economic interests and member rights in certain portfolio properties, as well as indemnification for any liabilities created by Defendants' breaches of their fiduciary duties.

## PARTIES

6. Plaintiff Richard Kulick is 43 years old and resident of the State of Florida.

7. Defendant GRE is a Delaware limited liability company having a principal place of business at 101 Park Avenue, Suite 2602, New York, New York 10178. Upon information and belief, GRE's current members are all Delaware and New York residents.

8. Defendant SLP is a Delaware limited liability company having a principal place of business at 101 Park Avenue, Suite 2602, New York, New York 10178. Upon information and belief, SLP's current members are all Delaware, New York and Connecticut residents.

9. Defendant GF Limited Partner is a Delaware limited liability company. Upon information and belief, GF Limited Partner's current members are defendants Jon Kalikow and Richard Kalikow, both New York residents.

10. Defendant JV Management is a Delaware limited liability company. Upon information and belief, JV Management's current members are defendant Illuzzi, a Connecticut resident, and defendant Nguyen, a New York resident.

11. Defendant Richard Kalikow is, among other roles, the Chairman and C.E.O. of defendant GRE and is a resident of New York.

12. Defendant Jon Kalikow is, among other roles, the President of defendant GRE and is a resident of New York.

13. Defendant Illuzzi is, among other roles, a member of defendant JV Management and is a resident of Connecticut.

14. Defendant Nguyen is, among other roles, a member of defendant JV Management and is a resident of New York.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the controversy is one between citizens of different States and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (d), because several defendants reside in this District and because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

**The Parties**

17. According to its website, defendant GRE "is a boutique commercial real estate firm based in New York City. The firm runs three operations – Gamma Lending, Gamma Multifamily, and Gamma Development. Owned and operated by the Kalikow family, Gamma Real Estate boasts a forty-five year history of success as both lenders and owners of commercial real estate."

Over the course of this forty-five-year history, GRE's involvement in New York real estate development has spawned a well-publicized body of litigation.[1]

18. Defendants Richard Kalikow and Jon Kalikow (collectively, the "Kalikows") control, through various corporate and limited partnership entities, GRE's real estate development and financing businesses.

19. GRE's Lending and Development operations are funded in large part by defendants Illuzzi and Nguyen, through their relationship with a high-net-worth investor.

20. Kulick is a nationally recognized investor in commercial real estate with extensive experience and industry contacts. Kulick met defendants Illuzzi and Nguyen in connection with his role leading multifamily acquisitions and asset management for a private equity firm located in New York City and Miami.

21. In April 2015, Illuzzi and Nguyen approached Kulick to propose a partnership in which they would purchase multifamily real estate properties. Although Illuzzi and Nguyen suggested that this partnership would include one of New York's most prominent real estate families, Kulick did not learn of the Kalikows' involvement until negotiations for the new partnership were well underway.

22. In May 2015, Illuzzi and Nguyen arranged a meeting with Kulick and Richard and Jon Kalikow. After Kulick explained the opportunities presented by investment in multifamily properties in the southeastern United States, the Kalikows offered Kulick a position. Kulick created Gamma's Multifamily business and became its chief investment officer, in exchange for a 12.5% equity stake in what would become SLP, as well as a yearly salary of $180,000.

---

[1] *See, e.g., In re BH Sutton Mezz LLC*, Adv. Pro. No. 16-01187(SHL) (Bankr. S.D.N.Y.); Ameena Walker, "Sutton Place Skyscraper Drama Continues with New Lawsuit," Aug. 28, 2018 available at https://ny.curbed.com/2018/8/28/17792266/sutton-place-skyscraper-lawsuit-east-river-fifties-alliance.

23. On October 29, 2015, the parties formed SLP and executed the LLC Agreement. As set forth in Exhibit A to the LLC Agreement, SLP's Members were defendant GF Limited Partner (controlled by the Kalikows), defendant JV Management (controlled by Illuzzi and Van Nguyen), and Kulick.

**The LLC Agreement**

24. As the LLC Agreement makes clear, SLP exists to funnel the profits of some of its portfolio companies to the SLP members: "[T]he sole business of [SLP] shall be to receive certain fees and profits interests from Platform Investments and to pay certain expenses of [SLP] and the Members and their Affiliates in connection with such Platform Investments." *Id.* § 1.3.

25. SLP has three classes of members: Class A Members have a Management Interest, defined as the "right to participate in the management of the business and affairs of the Company;" Class B Members have a Fee Income Economic Interest, defined as the "right, expressed as a percentage, to share in distributions of Fee Income;" and Class C Members have a Carried Interest Income Economic Interest, defined as "the right, expressed as a percentage, to share in distributions of Carried Interest Income." *Id.* Ex. A; Article II.

26. Pursuant to the membership interests provided by the LLC Agreement, Kulick held a Class A Management Interest of 12.5%, a Class B Fee Income Economic Interest of 12.5%, and a Class C Carried Interest Economic Interest of 12.5%. Defendants GF Limited Partner and JV Management each held a Class A Management Interest of 43.75%, a Class B Fee Income Economic Interest of 43.75%, and a Class C Carried Interest Economic Interest of 43.75%. *Id.* Ex. A.

27. Significantly, in light of Kulick's responsibility for the acquisition and subsequent day-to-day management of the SLP portfolio companies, the LLC Agreement also designates

6

Kulick as the Administrative Member charged with "implement[ing] the decisions of the Class A [Managing] Members." LLC Agreement ¶ 5.10. As the SLP Administrative Member, Kulick's was directed to, among other responsibilities, "[o]versee, coordinate and process the operations, including, without limitation, the management on a day-to-day basis of any and all of the assets of the Company," "[t]ake all proper and necessary actions reasonably required to cause the Company and all third parties at all times to perform and comply with . . . any loan commitment," and "[m]anage and administer the process of acquiring, selling and financing Platform Investments." *Id.* § 5.10(b).

28.     The LLC Agreement provides specific terms and conditions governing the withdrawal of a Member from SLP. Under the LLC Agreement, a withdrawal of a Member is classified as a Voluntary Withdrawal, an Involuntary Withdrawal, or a termination for Cause.

29.     Under the LLC Agreement, Kulick could not make a "Voluntary Withdrawal" without surrendering all of his economic and membership interests:

> "***Voluntary Withdrawal***" shall mean with respect to a Member the voluntary withdrawal from the Company by such Member. For the purposes of clarification, in the case of [Kulick], his resignation as an employee of GRE or its Affiliate shall constitute an Involuntary Withdrawal hereunder unless [Kulick] also affirmatively voluntarily withdraws as a Member of the Company.

30.     The LLC Agreement also provides:

> "***Involuntary Withdrawal***" shall mean, with respect to any Member, his, her or its Death or Disability, and in the case of [Kulick] only, his resignation as an employee of GRE or its Affiliate or the termination by GRE or its Affiliate of his employment for any reason or no reason.

Accordingly, under the LLC Agreement's terms, a non-Cause termination by GRE of Kulick's employment constitutes Kulick's Involuntary Withdrawal.

31.     The LLC Agreement provides that only Kulick is subject to removal for Cause, defined as follows:

7

"***Cause***" shall mean, with respect to the termination of [Kulick's] employment by GRE or its Affiliate, any of the following occurrences: (i) [Kulick's] conviction by a court of competent jurisdiction of any offense punishable by imprisonment in a state or federal penitentiary or any offense, civil or criminal, involving moral turpitude or immoral conduct; (ii) [Kulick's] unethical conduct in the performance of his duties, including, without limitation, willful misconduct, gross negligence, fraud, theft, embezzlement, misappropriation of assets, or other conduct of a criminal or unethical nature; (iii) [Kulick's] use of illegal drugs, intoxication while performing Company or GRE business or abusive use of prescription drugs; (iv) [Kulick's] breach of this Agreement or negligence in the performance of his duties hereunder or as an employee of the Company or GRE, or if [Kulick] is determined to be in violation of the Company's or GRE's employment or operations manuals or otherwise not acting in the best interests of the Company or GRE, which breach, negligence or violation is not cured within a period of thirty (30) days after [Kulick's] receipt of written notice specifying such breach, negligence or violation and demanding a cure thereof; or (v) [Kulick's] breach of any of the provisions of Section 9.4 hereof.

32. Section 9.4(a) of the LLC Agreement restricts Members' use of "Confidential Information," broadly defined, and provides that "each Member agrees that he or she will not at any time, whether during his or her employment with the Company or thereafter, disclose to anyone (other than in furtherance of the business of the Company) any Confidential Information, or utilize such Confidential Information for his or her own benefit, or for the benefit of third parties."

33. Critically, the LLC Agreement provides clear and unequivocal terms regarding the effect of a Member's withdrawal on that Member's interests. Section 8.1(c) provides in relevant part:

> Class C Members. . . . ***From and after the date of any Involuntary Withdrawal***, the Class C Membership Interest of the Withdrawing Member ***shall automatically be converted into an Economic Interest*** . . . and be subject to repurchase by the Company in accordance with the provisions of Section 8.2; provided, however, that upon any Involuntary Withdrawal by [Kulick] arising from the termination by GRE or its Affiliate of his employment for Cause, then [Kulick's] Class C Membership Interest shall be terminated and redeemed by the Company for the price of $0.01.

*Id.* § 8.1(c) (emphasis supplied).

34.     Unlike Class C Membership Interests, Class A and Class B Membership Interests automatically terminate upon the Involuntary Withdrawal of a Member. *Id.* § 8.1(a), (b).

**Kulick's Role at Gamma**

35.     Kulick began building Gamma's multifamily portfolio immediately, drawing on his extensive experience in the commercial real estate industry. Contrary to what Kulick was led to believe during his negotiations with the Kalikows, however, Gamma had no intention of investing significant equity in the deals Kulick was expected to structure. Despite this bait-and-switch, Kulick successfully closed Gamma's first multifamily deal in December 2015 – a property called Waverly Station, in Savannah, Georgia.

36.     Under Kulick's leadership, Gamma went on to buy eighteen multifamily property deals over the past five years through SLP and other LLCs, a portfolio with a total capitalization of approximately $800 million. Kulick and his team raised over 70% of the equity for these deals.

37.     In general, the deals in Gamma's multifamily portfolio are structured as individual joint venture partnerships, with 80% to 90% of the equity going to an institutional partner, and the remaining equity going to Gamma. These deals pay a one-time acquisition fee (typically, 1% of the purchase price) and a 1% asset management fee (typically, 1% of the equity). Most significantly, these deals pay a "carried interest" of profit share, typically calculated as 20% of the profit after investors have earned a set preferred return on their investments. This "carried interest income" – also called a "promote" – is not earned until a property is sold or substantially refinanced, generally three to five years after deal closing.

38.     By 2019, Kulick's efforts had made Gamma's multifamily operations the most profitable business of the company. Despite the SLP Members having invested less than 1% of the equity underlying these deals, they have made approximately $10 million in profits to date.

Critically, the vast majority of Gamma's profits from the multifamily portfolio will be earned in the next two to three years, when the Defendants and Kulick should earn approximately $96 million in carried interest income.

39. Each of the deals in Gamma's multifamily portfolio has a property-specific limited liability company or general partner formed to purchase the asset, manage the deal's financing, and run the day-to-day operations of the property. For some of the deals in Gamma's multifamily portfolio, SLP is itself directly involved in the organizational chart of the deal, and in others, it is not.

40. By April 2020, Gamma's multifamily portfolio consisted of fifteen multifamily properties, as three had been sold prior to the second quarter of 2020. Of the fifteen deals in Gamma's multifamily portfolio, SLP is not involved in eleven. Instead, the deal-specific LLC or general partner has a combination of the same five individuals as members, each of whom has a direct economic interest in the entity by virtue of their membership, according to the deal documents: Richard Kalikow, Jon Kalikow, Illuzzi, Nguyen and Kulick. These eleven deals are known by Gamma respectively as Elan, Parmer, Carrington, Windsor Falls, Highland Lake, Pavilion at Lake Eve, The Cove, The Clarion, The Aventine, Springfield, and Laurel View (collectively, "The Partnership Properties").

41. Critically, Kulick remains a member of the general partner or managing LLC for each of The Partnership Properties.

**Kulick's Negotiated Involuntary Withdrawal from Gamma**

42. In mid-2019, Jon Kalikow began to insert himself to an unprecedented degree in the operation of the multifamily portfolio. Specifically, Jon Kalikow demanded the right to edit

quarterly investor letters, began contacting third parties involved in portfolio properties' financing, and started inserting his lending business employees into the multifamily business.

43.    Jon Kalikow's sudden interest in Gamma's thriving multifamily business had everything to do with the stagnation of Gamma's lending business, which Jon Kalikow led. Specifically, by 2019, Gamma's lending business was not only failing to generate new deals, but over 75% of its existing deals were in default.  Moreover, Gamma's involvement in the development of a Sutton Place condominium building was mired in lawsuits over zoning restrictions and alleged conflicts of interest.  In Gamma's multifamily business, Jon Kalikow saw an opportunity to claim credit for Kulick's successes – which had already generated $10 million in five years – just as Gamma prepared to reap the benefits of these deals through its carried interest income profits.

44.    The Kalikows' struggles with Gamma's lending business also led to increasingly acrimonious interactions with Illuzzi and Nguyen.  By the end of 2019, Jon Kalikow's relationship with Illuzzi and Nguyen had become so acrimonious that Jon Kalikow proposed to Kulick on multiple occasions that he and his father would cut Illuzzi and Nguyen out of SLP and manage the portfolio together with Kulick.  According to Richard Kalikow, Illuzzi and Nguyen "did not add value" and "did not understand this business."

45.    Given that Jon Kalikow's increasing interference with the multifamily business had compromised Kulick's ability to conduct his duties as SLP's Administrative Member, and in light of Jon Kalikow's expressed willingness to undercut some of Gamma's most important partners, Kulick began to explore leaving Gamma in late 2019.  In mid-February 2020, Kulick raised the possibility that he could make an Involuntary Withdrawal from SLP to allow for his Carried

11

Interest Income Economic Interest to be purchased by the remaining Members pursuant to Section 8.2 of the LLC Agreement.

46. The terms of Kulick's Involuntary Withdrawal were negotiated during a February 27, 2020 meeting of the SLP Members.

47. During this meeting, the SLP Members determined that Kulick would resign as Administrative Member of SLP effective March 31, 2020. The SLP Members also informed Kulick that, pursuant to the LLC Agreement, Kulick's Involuntary Withdrawal would terminate his Class A and Class B Membership Interests.

48. Critically, the SLP Members made clear during the February 27, 2020 meeting that Kulick would *not* lose his Class C Membership Interests upon his departure. Instead, the SLP Members expressly stated that Kulick's withdrawal from SLP was an Involuntary Withdrawal.

49. On March 19, 2020, Kulick wrote an email to memorialize this agreement, saying, "Pursuant to our conversation on 2/27, we agreed that my 12.5% stake in SLP remains intact . . .."

50. On March 20, 2020, Jon Kalikow responded in an email confirming that Kulick would retain his Class C Membership Interests, saying:

> You are currently a Class A Member, a Class B Member and a Class C Member of [SLP], as well as the current 'Administrative Member.' Once your employment with Gamma Real Estate ends, you will lose your Class A Membership rights (voting rights in [SLP]), your Class B Membership rights (rights to a percentage of fee income), and will no longer be the designated 'Administrative Member.' Nonetheless, as discussed, absent a termination 'for cause', and unless the other members elect to buy out your Class C Membership Interests, you will retain your 12.5% Class C Membership Interests (rights to receive promote/carried interest income available for distribution).

51. Jon Kalikow's March 20, 2020 email also confirmed that Kulick's departure from SLP would not affect his membership in the other portfolio companies' managing entities: "To

the extent you are a member of the GP in the [multifamily] properties we currently still own, you will remain a member of that GP, with the same voting rights that you have today."

52. Critically, Defendants did not claim at any time prior to Kulick's departure on March 31, 2020 that his withdrawal was a for-Cause termination, or that there was any Cause.

53. Kulick understood his withdrawal from Gamma to be an amicable separation; indeed, in the weeks leading up to his departure, Kulick participated in drafting communications regarding his separation from Gamma and worked to transition his responsibilities to others at Gamma.

54. Believing that Gamma was acting in good faith, Kulick even asked Gamma to defer a $150,286 payment, representing a portion of the Carried Interest Income owed to Kulick from the sale of two multifamily projects, Stone Ridge and Whitehall, from its originally scheduled wire date in mid-March to April 15, 2020.

55. Kulick continued to manage Gamma's multifamily portfolio and to fulfill his duties as SLP's Administrative Member until his negotiated withdrawal date of March 31, 2020. In light of his ongoing membership in The Partnership Properties, Kulick retained copies of relevant files to ensure that he would have access to the documents underlying these properties' financing and management. For example, because he is the guarantor on many of the loans financing these deals, Kulick retained copies of the loan documents as a record of his obligations, rights and potential liabilities in connection with these transactions.

56. Gamma not only authorized Kulick to retain these files, but affirmatively confirmed that he retained his rights as a member of the respective general partners of The Partnership Properties.

57.     Moreover, as a Member of SLP, Kulick had the right to possess Confidential Information as defined by Section 9.4(a) of the LLC Agreement.

**Gamma's Purported Retroactive "Termination" of Kulick's Membership Interests**

58.     On April 6, 2020, Kulick joined Beacon Real Estate Group, LLC in Florida.

59.     By letter dated April 13, 2020, two days before the date Gamma had agreed to wire $150,286 in Carried Interest Income proceeds to Kulick, counsel for GRE and SLP informed Kulick that they possessed "evidence that, during the term of [Kulick's] employment, [Kulick] engaged in conduct that constitutes Cause as defined under the [LLC Agreement]." Specifically, the letter asserts that, during his employment, Kulick "wrongfully used, disclosed, and took the Companies' highly confidential, proprietary and/or trade secret information." Annexed hereto as Exhibit 1 is a true and correct copy of the April 13, 2020 Letter fr. C. Goodman to R. Kulick (the "April 13 Letter").

60.     Gamma did not send Kulick the $150,286 in Carried Interest Income due to be wired on April 15, 2020, and instead improperly retained those funds.

61.     The assertions in the April 13 Letter were objectively false and utterly meritless.

62.     Notwithstanding the fact that Kulick's Involuntary Withdrawal from SLP had occurred nearly two weeks earlier – and that Gamma's counsel's letter states that "Your Class A Membership interests were *terminated on March 31, 2020, the effective date of your Involuntary Withdrawal*," the April 13 Letter purported to transform his withdrawal retroactively as one for "Cause" for purposes of his Class C Membership Interests. *See* April 13 Letter, p. 2 (emphasis supplied).

63.     Yet, on the basis of these false, meritless and inconsistent claims, the April 13 Letter purported to terminate Kulick's Class C Membership Interests – which, under the clear terms of

the LLC Agreement, had been automatically converted to a Carried Interest Income Economic Interest on March 31, 2020, almost two weeks prior.

64. Defendants' belated attempt to concoct baseless allegations of misconduct weeks after Kulick's negotiated departure was a thinly-veiled ploy to usurp Kulick's 12.5% share of the Carried Interest Income Economic Interest granted to him by the LLC Agreement in some of the multifamily portfolio properties.

65. Defendants' purported "termination" of Kulick's Carried Interest Income Economic Interest should be deemed void as a matter of law.

66. In addition, defendants Richard Kalikow, Jon Kalikow, Illuzzi and Nguyen intentionally have withheld information relating to the financing and operations of The Partnership Properties, notwithstanding Kulick's entitlement to this information as a member of the managing entities of The Partnership Properties.

67. Kulick, through counsel, responded to Gamma's letter on April 28, 2020. Annexed hereto as Exhibit 2 is a true and correct copy of the April 28, 2020 Letter fr. A. Zeisler to C. Goodman (the "April 28 Letter"). No response has been received.

## FIRST CAUSE OF ACTION

### BREACH OF LLC AGREEMENT
### (as to defendants SLP, GF Limited Partner and JV Management)

68. Kulick repeats and realleges each and every allegation contained in paragraphs 1 through 67 of the Complaint as if fully set forth herein.

69. The LLC Agreement was a binding and enforceable contract between GF Limited Partner, JV Management and Kulick.

70. Kulick performed his obligations pursuant to the terms of the LLC Agreement.

15

71. Kulick's March 31, 2020 withdrawal from SLP was an Involuntary Withdrawal under the terms of the LLC Agreement.

72. In relevant part, section 8.1(c) of the LLC Agreement provides that, "***From and after the date*** of any Involuntary Withdrawal, the Class C Membership Interest of the Withdrawing Member ***shall automatically be converted into an Economic Interest*** . . . ."

73. Accordingly, upon Kulick's Involuntary Withdrawal on March 31, 2020, his Class C Membership Interests were automatically converted into an Economic Interest.

74. By purporting to belatedly change Kulick's negotiated Involuntary Withdrawal to a termination for "Cause," and thereby purporting to terminate Kulick's Class C Membership Interests, defendants GF Limited Partner and JV Management breached the LLC Agreement.

75. By purporting to belatedly change Kulick's negotiated Involuntary Withdrawal to a termination for "Cause," and thereby purporting to terminate Kulick's Class C Membership Interests, defendants GF Limited Partner and JV Management also breached the implied covenant of good faith and fair dealing inherent in all contracts under New York law.

76. As a result of defendants GF Limited Partner and JV Management's breaches of the LLC Agreement, Kulick is entitled to an award of damages in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**

**BREACH OF FIDUCIARY DUTY**
**(as to defendants GF Limited Partner and JV Management)**

77. Kulick repeats and realleges each and every allegation contained in paragraphs 1 through 76 of the Complaint as if fully set forth herein.

78. Pursuant to the LLC Agreement, defendants GF Limited Partner and JV Management owed a fiduciary duty to SLP's Members.

79.     One of the duties of a limited liability company's managing members is to govern the limited liability company in accordance with the limited liability company's operating agreement.

80.     The duty of loyalty requires a fiduciary such as defendants GF Limited Partner and JV Management to refrain from self-interested transactions unless the terms of such a transaction are entirely fair.  It further mandates that those in control of corporate processes do not unfairly manipulate those processes to retain such control.

81.     Defendants GF Limited Partner and JV Management failed to discharge their duties as managing members.

82.     Defendants GF Limited Partner and JV Management failed to discharge their duties as managing members to any reasonable standard of care.

83.     Defendants GF Limited Partner and JV Management breached their fiduciary obligations to Kulick though the breach of the LLC Agreement and the conversion or otherwise unlawful taking of Kulick's Carried Interest Income Economic Interest.

84.     As a direct result of defendants GF Limited Partner and JV Management's breaches of their fiduciary duty, Kulick has been damaged in an amount to be proven at trial.

### THIRD CAUSE OF ACTION

**CONVERSION**
**(as to all Defendants)**

85.     Kulick repeats and realleges each and every allegation contained in paragraphs 1 through 84 of the Complaint as if fully set forth herein.

86.     Defendants assumed unauthorized exercise of the right of ownership over specific funds that rightfully belonged to Kulick, to the exclusion of Kulick's rights.

87. Prior to and at the time of Defendants' wrongful ownership, possession or control of the specific funds in question, Kulick was the rightful and legal owner of said funds.

88. By reason of the foregoing, Kulick has been damaged in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION

**UNJUST ENRICHMENT**
**(as to all Defendants)**

89. Kulick repeats and realleges each and every allegation contained in paragraphs 1 through 88 of the Complaint as if fully set forth herein.

90. Defendants have been enriched at Kulick's expense.

91. Defendants have been enriched unlawfully by the funds rightly belonging to Kulick.

92. Equity and good conscience require Kulick to recover said enrichment from the Defendants.

93. It is against equity and good conscience to permit Defendants to retain all or any portion of the funds that have been diverted by Defendants.

94. By reason of the foregoing, Kulick seeks damages for conversion, and the imposition of a constructive trust.

95. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee.

96. Under New York law, a constructive trust is imposed on sums transferred to a fiduciary in reliance on a promise by which he or she is unjustly enriched.

97. Here, Defendants enriched themselves by usurping Kulick's Carried Interest Income Economic Interest in violation of their fiduciary duty to Kulick.

98.     By reason of the foregoing, Kulick is entitled to a constructive trust over the funds claimed by Defendants in violation of the LLC Agreement.

## FIFTH CAUSE OF ACTION

### EQUITABLE ACCOUNTING
**(as to all Defendants)**

99.     Kulick repeats and realleges each and every allegation contained in paragraphs 1 through 98 of the Complaint as if fully set forth herein.

100.     The New York Court of Appeals has held that an equitable accounting "is designed to require a person in possession of financial records to produce them, demonstrate how money was expended and return pilfered funds in his or her possession."

101.     By virtue of their membership in SLP, the parties were in a confidential business relationship through which funds were entrusted to Defendants.

102.     Here, Defendants possess funds that rightfully belong to Kulick.

103.     Kulick has no adequate remedy at law to force an accounting from Defendants.

104.     By reason of the foregoing, an equitable accounting of Defendants should be ordered.

## SIXTH CAUSE OF ACTION

### BREACH OF FIDUCIARY DUTY
**(as to defendants Richard Kalikow, Jon Kalikow, Illuzzi and Nguyen)**

105.     Kulick repeats and realleges each and every allegation contained in paragraphs 1 through 104 of the Complaint as if fully set forth herein.

106.     Kulick owns a management interest and an economic interest in the managing entities of each of The Partnership Properties.

107. Pursuant to the LLC agreements and/or operating agreements of the managing entities of The Partnership Properties, defendants Richard Kalikow, Jon Kalikow, Illuzzi and Nguyen owe a fiduciary duty to Kulick.

108. One of the duties of a limited liability company's managing members is to govern the limited liability company in accordance with the limited liability company's operating agreement.

109. Defendants Richard Kalikow, Jon Kalikow, Illuzzi and Nguyen failed to discharge their duties as managing members.

110. Defendants Richard Kalikow, Jon Kalikow, Illuzzi and Nguyen failed to discharge their duties as managing members to any reasonable standard of care.

111. By intentionally withholding information relating to the financing and operations of The Partnership Properties, defendants Richard Kalikow, Jon Kalikow, Illuzzi and Nguyen breached their fiduciary duties to Kulick.

**SEVENTH CAUSE OF ACTION**

**DECLARATORY JUDGMENT**
**(as to defendants Richard Kalikow, Jon Kalikow, Illuzzi and Nguyen)**

112. Kulick repeats and realleges each and every allegation contained in paragraphs 1 through 111 of the Complaint as if fully set forth herein.

113. Kulick remains a managing member of entities controlling The Partnership Properties and retains his share of the associated economic interests.

114. Kulick is the guarantor on many of the loans financing The Partnership Properties.

115. In violation of their fiduciary duties, defendants Richard Kalikow, Jon Kalikow, Illuzzi and Nguyen intentionally have withheld information relating to these projects from Kulick

– effectively leaving Kulick liable on loans, while depriving him of his economic share of the deals.

116. Kulick is entitled to a declaratory judgment: (1) confirming his contractual entitlement to his economic interests in The Partnership Properties; (2) confirming his rights as a member in The Partnership Properties; and (3) requiring defendants Richard Kalikow, Jon Kalikow, Illuzzi and Nguyen to indemnify Kulick for any liabilities created by defendants' breaches of their fiduciary duties.

## PRAYER FOR RELIEF

WHEREFORE, Kulick respectfully requests that this Court enter a Judgment:

(a) In favor of Kulick and against defendants SLP, GF Limited Partner and JV Management on the First Cause of Action for breach of the LLC Agreement;

(b) In favor of Kulick and against defendants GF Limited Partner and JV Management on the Second Cause of Action for breach of fiduciary duty;

(c) In favor of Kulick and against all Defendants on the Third Cause of Action for conversion;

(d) In favor of Kulick and against all Defendants on the Fourth Cause of Action for unjust enrichment;

(e) In favor of Kulick and against all Defendants on the Fifth Cause of Action for equitable accounting;

(f) In favor of Kulick and against defendants Richard Kalikow, Jon Kalikow, Illuzzi and Nguyen on the Sixth Cause of Action for breach of fiduciary duty;

(g) Declaring that Kulick retains his contractual entitlement to his economic interests and member rights in The Partnership Properties;

(h)     Declaring that defendants Richard Kalikow, Jon Kalikow, Illuzzi and Nguyen are required to indemnify Kulick for any liabilities created by defendants' breaches of their fiduciary duties;

(i)     Awarding Kulick compensation for any and all damages, injury or harm; and

(j)     Ordering such other relief as this Court deems necessary and proper.

## DEMAND FOR JURY TRIAL

Kulick hereby makes a demand pursuant to Federal Rule of Civil Procedure 38 for a trial by jury on all issues triable to a jury.

Dated: New York, New York
       May 7, 2020

ZEISLER PLLC


By:   /s/ Aaron M. Zeisler
        Aaron M. Zeisler
        Meghan H. Sullivan
800 Third Avenue, 28th Floor
New York, New York 10022
Tel: (212) 671-1921
aaron@zeisler-law.com
meghan@zeisler-law.com

*Attorneys for Plaintiff Richard Kulick*