UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

RICHARD KULICK,      :

     : 

       Plaintiff,      :    **AMENDED COMPLAINT**

     :

          -against-      :    No. 1:20-cv-3582

     :

GAMMA REAL ESTATE LLC, GRE JV SLP LLC,      :

GAMMA FUNDING SPECIAL LIMITED PARTNER      :    **JURY TRIAL DEMANDED**

LLC, JV MANAGEMENT LLC, N. RICHARD      :

KALIKOW, JONATHAN KALIKOW, JOHN ILLUZZI,      :

and VAN NGUYEN,      :

     :

       Defendants.      :

------------------------------------------------------------------------ x

Plaintiff Richard Kulick ("Kulick" or "Plaintiff"), by his undersigned counsel, alleges

against defendants Gamma Real Estate LLC ("GRE"), GRE JV SLP LLC ("SLP"), Gamma

Funding Special Limited Partner LLC ("GF Limited Partner"), JV Management LLC ("JV

Management"), N. Richard Kalikow ("Richard Kalikow"), Jonathan Kalikow ("Jon Kalikow"),

John Illuzzi ("Illuzzi"), and Van Nguyen ("Nguyen") (collectively, the "Defendants" or "Gamma")

as follows:

## NATURE OF THE ACTION

1. This action involves Gamma's attempt to deprive Kulick of his share of carried

interest income generated from a portfolio of real estate deals, which vested upon his withdrawal

from Gamma under the clear and unequivocal terms of the agreement governing the parties'

relationship. As Gamma's principals confirmed repeatedly before Kulick's negotiated departure

date of March 31, 2020, Kulick's non-Cause withdrawal from SLP entitled him to retain his Class

C Membership Interests under the GRE JV SLP LLC Agreement (the "LLC Agreement"). These

Class C Membership Interests, which entitled Kulick to 12.5% of SLP's Carried Interest Income,

were "automatically [] converted into an Economic Interest" upon his withdrawal on March 31, 2020, under the express terms of Section 8.1(c) of the LLC Agreement. This Economic Interest and those described herein are currently worth in excess of $10 million.

2. On April 13, 2020 – just two days before an Economic Interest payment was due to be made – counsel for Gamma sent a letter to Kulick that attempted to rewrite history. Ignoring both the negotiated terms of Kulick's withdrawal from SLP and the clear language of the LLC Agreement, Gamma's letter falsely claimed that Kulick had "wrongfully used, disclosed, and took the Companies' highly confidential, proprietary and/or trade secret information" during his employment and belatedly asserted, for the first time, that Gamma instead had terminated Kulick for Cause. On the basis of these objectively false assertions, Gamma's letter purported to retroactively terminate Kulick's Class C Membership Interests – claiming to "redeem" these multi-million-dollar interests for "the price of $0.01."

3. Gamma's belated attempt to concoct baseless allegations of misconduct weeks after Kulick's negotiated March 31 departure represents a shamelessly transparent ploy to usurp not only Kulick's 12.5% share of SLP's Carried Interest Income Economic Interest, to which he is entitled under the LLC Agreement, but also his Economic Interest in other projects that SLP does not control.

4. Gamma's post hoc effort to deprive Kulick of his share of the real estate portfolio that he constructed is part of a larger scheme to cut Kulick out of the multifamily real estate business he created for Gamma. In the months prior to Kulick's departure, Gamma's principals deliberately sabotaged Kulick's projects, undermined his relationships with investors and property managers, and interfered with his efforts to manage Gamma's multifamily business – all in a

thinly-veiled attempt to undermine Kulick's position at Gamma and force him out, so that Defendants could seize his share of profits for themselves.

5.      Defendants' self-dealing and bad faith are particularly brazen in light of the reality that, notwithstanding the sham "termination" of Kulick's Economic Interest in SLP on April 13, 2020, Kulick remains, with defendants Richard Kalikow, Jon Kalikow, Illuzzi and Nguyen (the "Individual Defendants"), a member or managing member of entities controlling over a dozen properties in Gamma's multifamily real estate portfolio and retains his share of the associated Economic Interests.  Under these entities' LLC agreements, Kulick is entitled to 20% (and, in some cases, 33.3%) of these entities' net profits and cash available for distribution.  Defendants have failed to pay Kulick the profits to which he is unquestionably entitled under these agreements.

6.      In addition, Defendants have, on information and belief, funneled these entities' profits to another corporate entity – rendering Kulick's Economic Interests therein worthless.

7.      In this way, Defendants have taken steps to ensure that Kulick bears all of the risk of these deals, but receives none of the benefits.  As set forth herein, Kulick was so central to the structuring of the deals in Gamma's multifamily portfolio that he is the guarantor on many of the loans financing the properties.  Despite having orchestrated his departure from Gamma, Defendants have not replaced Kulick on the loans financing Gamma's deals.

8.      Moreover, in violation of the relevant LLC agreements, the Individual Defendants intentionally have withheld information relating to these projects from Kulick.  Specifically, even though Kulick is still a managing member of the LLCs, the Individual Defendants have stopped providing Kulick the weekly and monthly reports relating to these projects and their finances that he had been receiving, and they have directed property managers to reject Kulick's request for

3

these reports – information to which Kulick is entitled as a fellow fiduciary and managing member of the LLCs.

9.  The Individual Defendants' have frozen Kulick out of all aspects of these properties' management, finances, and operation, leaving Kulick liable on loans while keeping Kulick's economic share of the deals for themselves.

10.  Kulick brings this action to recover the damages caused by Defendants' wrongful acts, and herein asserts several claims for breach of contract, breach of fiduciary duty, and unjust enrichment.  Kulick also seeks a declaratory judgment confirming his contractual entitlement to his economic interests and member rights in certain portfolio properties, as well as indemnification for any liabilities created by Defendants' breaches of their fiduciary duties.

**PARTIES**

11.  Plaintiff Richard Kulick is 43 years old and resident of the State of Florida.

12.  Defendant GRE is a Delaware limited liability company having a principal place of business at 101 Park Avenue, 11th floor, New York, New York 10178.  Upon information and belief, GRE's current members are all Delaware and New York residents.

13.  Defendant SLP is a Delaware limited liability company having a principal place of business at 101 Park Avenue, 11th floor, New York, New York 10178.  Upon information and belief, SLP's current members are all Delaware, New York and Connecticut residents.

14.  Defendant GF Limited Partner is a Delaware limited liability company.  Upon information and belief, GF Limited Partner's current members are defendants Jon Kalikow and Richard Kalikow, both New York residents.

15.     Defendant JV Management is a Delaware limited liability company.  Upon information and belief, JV Management's current members are defendant Illuzzi, a Connecticut resident, and defendant Nguyen, a New York resident.

16.     Defendant Richard Kalikow is, among other roles, the Chairman and C.E.O. of defendant GRE and is a resident of New York.

17.     Defendant Jon Kalikow is, among other roles, the President of defendant GRE and is a resident of New York.

18.     Defendant Illuzzi is, among other roles, a member of defendant JV Management and is a resident of Connecticut.

19.     Defendant Nguyen is, among other roles, a member of defendant JV Management and is a resident of New York.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the controversy is one between citizens of different States and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

21.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (d), because several defendants reside in this District and because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

**The Parties**

22.     According to its website, defendant GRE "is a boutique commercial real estate firm based in New York City.  The firm runs three operations – Gamma Lending, Gamma Multifamily, and Gamma Development.  Owned and operated by the Kalikow family, Gamma Real Estate

boasts a forty-five year history of success as both lenders and owners of commercial real estate." Over the course of this forty-five-year history, GRE's involvement in New York real estate development has spawned a well-publicized body of litigation.[1]

23.     Defendants Richard Kalikow and Jon Kalikow (collectively, the "Kalikows") control, through various corporate and limited partnership entities, GRE's real estate development and financing businesses.

24.     GRE's Lending and Development operations are funded in large part by defendants Illuzzi and Nguyen, through their relationship with a high-net-worth investor.

25.     Kulick is a nationally recognized investor in commercial real estate with extensive experience and industry contacts.  Kulick met defendants Illuzzi and Nguyen in connection with his role leading multifamily acquisitions and asset management for a private equity firm located in New York City and Miami.

26.     In April 2015, Illuzzi and Nguyen approached Kulick to propose a partnership in which they would purchase multifamily real estate properties.  Although Illuzzi and Nguyen suggested that this partnership would include one of New York's most prominent real estate families, Kulick did not learn of the Kalikows' involvement until negotiations for the new partnership were well underway.

27.     In May 2015, Illuzzi and Nguyen arranged a meeting with Kulick and Richard and Jon Kalikow.  After Kulick explained the opportunities presented by investment in multifamily properties in the southeastern United States, the Kalikows offered Kulick a position as partner and the catalyst for its multifamily aspirations.  Kulick created Gamma's multifamily business and

---

[1] *See, e.g., In re BH Sutton Mezz LLC*, Adv. Pro. No. 16-01187(SHL) (Bankr. S.D.N.Y.); Ameena Walker, "Sutton Place Skyscraper Drama Continues with New Lawsuit," Aug. 28, 2018 available at https://ny.curbed.com/2018/8/28/17792266/sutton-place-skyscraper-lawsuit-east-river-fifties-alliance.

became its chief investment officer, in exchange for a 12.5% equity stake in what would become SLP, membership interests in the property managing entities themselves, and a yearly salary of $180,000.

28.     On October 29, 2015, the parties formed SLP and executed the LLC Agreement. *See* ECF No. 18 Ex. 2.  As set forth in Exhibit A to the LLC Agreement, SLP's Members were defendant GF Limited Partner (controlled by Richard Kalikow and Jon Kalikow), defendant JV Management (controlled by Illuzzi and Van Nguyen), and Kulick.

**The LLC Agreement**

29.     As the LLC Agreement makes clear, SLP exists to receive the profits of some of its portfolio companies:  "[T]he sole business of [SLP] shall be to receive certain fees and profits interests from Platform Investments and to pay certain expenses of [SLP] and the Members and their Affiliates in connection with such Platform Investments." *Id.* § 1.3.

30.     SLP has three classes of members:  Class A Members have a Management Interest, defined as the "right to participate in the management of the business and affairs of the Company;" Class B Members have a Fee Income Economic Interest, defined as the "right, expressed as a percentage, to share in distributions of Fee Income;" and Class C Members have a Carried Interest Income Economic Interest, defined as "the right, expressed as a percentage, to share in distributions of Carried Interest Income." *Id.* Ex. A; Article II.

31.     Pursuant to the membership interests provided by the LLC Agreement, Kulick held a Class A Management Interest of 12.5%, a Class B Fee Income Economic Interest of 12.5%, and a Class C Carried Interest Economic Interest of 12.5%.  Defendants GF Limited Partner and JV Management each held a Class A Management Interest of 43.75%, a Class B Fee Income

Economic Interest of 43.75%, and a Class C Carried Interest Economic Interest of 43.75%. *Id.* Ex. A.

32. Significantly, in light of Kulick's responsibility for the acquisition and subsequent day-to-day management of the SLP portfolio companies, the LLC Agreement also designates Kulick as the Administrative Member charged with "implement[ing] the decisions of the Class A [Managing] Members." LLC Agreement ¶ 5.10. As the SLP Administrative Member, Kulick's was directed to, among other responsibilities, "[o]versee, coordinate and process the operations, including, without limitation, the management on a day-to-day basis of any and all of the assets of the Company," "[t]ake all proper and necessary actions reasonably required to cause the Company and all third parties at all times to perform and comply with . . . any loan commitment," and "[m]anage and administer the process of acquiring, selling and financing Platform Investments." *Id.* § 5.10(b).

33. The LLC Agreement provides specific terms and conditions governing the withdrawal of a Member from SLP. Under the LLC Agreement, a withdrawal of a Member is classified as a Voluntary Withdrawal, an Involuntary Withdrawal, or a termination for Cause.

34. Under the LLC Agreement, Kulick could not make a "Voluntary Withdrawal" without surrendering all of his economic and membership interests:

> "***Voluntary Withdrawal***" shall mean with respect to a Member the voluntary withdrawal from the Company by such Member. For the purposes of clarification, in the case of [Kulick], his resignation as an employee of GRE or its Affiliate shall constitute an Involuntary Withdrawal hereunder unless [Kulick] also affirmatively voluntarily withdraws as a Member of the Company.

35. The LLC Agreement also provides:

> "***Involuntary Withdrawal***" shall mean, with respect to any Member, his, her or its Death or Disability, and in the case of [Kulick] only, his resignation as an employee of GRE or its Affiliate or the termination by GRE or its Affiliate of his employment for any reason or no reason.

Accordingly, under the LLC Agreement's terms, a non-Cause termination by GRE of Kulick's employment constitutes Kulick's Involuntary Withdrawal.

36. The LLC Agreement provides that only Kulick is subject to removal for Cause, defined as follows:

> "*Cause*" shall mean, with respect to the termination of [Kulick's] employment by GRE or its Affiliate, any of the following occurrences: (i) [Kulick's] conviction by a court of competent jurisdiction of any offense punishable by imprisonment in a state or federal penitentiary or any offense, civil or criminal, involving moral turpitude or immoral conduct; (ii) [Kulick's] unethical conduct in the performance of his duties, including, without limitation, willful misconduct, gross negligence, fraud, theft, embezzlement, misappropriation of assets, or other conduct of a criminal or unethical nature; (iii) [Kulick's] use of illegal drugs, intoxication while performing Company or GRE business or abusive use of prescription drugs; (iv) [Kulick's] breach of this Agreement or negligence in the performance of his duties hereunder or as an employee of the Company or GRE, or if [Kulick] is determined to be in violation of the Company's or GRE's employment or operations manuals or otherwise not acting in the best interests of the Company or GRE, which breach, negligence or violation is not cured within a period of thirty (30) days after [Kulick's] receipt of written notice specifying such breach, negligence or violation and demanding a cure thereof; or (v) [Kulick's] breach of any of the provisions of Section 9.4 hereof.

37. Section 9.4(a) of the LLC Agreement restricts Members' use of "Confidential Information," broadly defined, and provides that "each Member agrees that he or she will not at any time, whether during his or her employment with the Company or thereafter, disclose to anyone (other than in furtherance of the business of the Company) any Confidential Information, or utilize such Confidential Information for his or her own benefit, or for the benefit of third parties."

38. Critically, the LLC Agreement provides clear and unequivocal terms regarding the effect of a Member's withdrawal on that Member's interests. Section 8.1(c) provides in relevant part:

Class C Members. . . . ***From and after the date of any Involuntary Withdrawal***, the Class C Membership Interest of the Withdrawing Member ***shall automatically be converted into an Economic Interest*** . . . and be subject to repurchase by the Company in accordance with the provisions of Section 8.2; provided, however, that upon any Involuntary Withdrawal by [Kulick] arising from the termination by GRE or its Affiliate of his employment for Cause, then [Kulick's] Class C Membership Interest shall be terminated and redeemed by the Company for the price of $0.01.

*Id.* § 8.1(c) (emphasis supplied).

39.     Unlike Class C Membership Interests, Class A and Class B Membership Interests automatically terminate upon the Involuntary Withdrawal of a Member. *Id.* § 8.1(a), (b).

**Kulick's Role at Gamma**

40.     Kulick began building Gamma's multifamily portfolio immediately, drawing on his extensive experience in the commercial real estate industry. Contrary to what Kulick was led to believe during his negotiations with the Kalikows, however, Gamma had no intention of investing significant equity in the deals Kulick was expected to structure. Despite this bait-and-switch, Kulick successfully closed Gamma's first multifamily deal in December 2015 – a property called Waverly Station, in Savannah, Georgia.

41.     Under Kulick's leadership, Gamma went on to buy eighteen multifamily property deals over the past five years through SLP and other LLCs, a portfolio with a total capitalization of approximately $800 million. Kulick and his team raised over 70% of the equity for these deals.

42.     In general, the deals in Gamma's multifamily portfolio are structured as individual joint venture partnerships, with 80% to 90% of the equity going to an institutional partner, and the remaining equity going to Gamma (which it syndicated to non-Gamma partners). These deals pay a one-time acquisition fee (typically, 1% of the purchase price) and a 1% asset management fee (typically, 1% of the equity), paid monthly. Most significantly, these deals pay a "carried interest" of profit share, typically calculated as 20% of the profit after investors have earned a set preferred

return on their investments. This "carried interest income" – also called a "promote" – is not earned until a property is sold or substantially refinanced, generally three to five years after deal closing.

43. By 2019, Kulick's efforts had made Gamma's multifamily operations the most profitable business of the company. Despite the SLP Members having invested less than 1% of the equity underlying these deals, they have made approximately $10 million in profits to date. Critically, the vast majority of Gamma's profits from the multifamily portfolio will be earned in the next two to three years, when the Defendants and Kulick should earn approximately $96 million in carried interest income.

44. Defendants made sure that much of GRE's overhead was paid for by the multifamily business; for example, GRE's CFO, while a GRE employee, had 30% of his salary paid by SLP, and SLP's share of the office rent more than doubled from inception through 2020. Defendants used Kulick's business to allow GRE to maintain its operations through a growing dependence on the acquisition fee and asset management fee stream. In fact, Gamma's CFO often remarked that "multifamily powers the business." This dynamic created tensions between Jon Kalikow and Kulick.

45. Significantly, Kulick's expertise in sourcing and completing the deals he secured for Gamma's multifamily portfolio did not provide him with insight into how Gamma distributed capital to stakeholders throughout its intricate and opaque corporate structure. Instead, Kulick trusted the Individual Defendants – who had superior knowledge and access to information regarding Gamma's investments, businesses and assets – to act in good faith, whether they were acting in their capacity as principals of SLP's members GF Limited Partner and JV Management, or as fellow fiduciaries.

**Properties That Have Been Sold:  The GRE Charlotte GP LLC Agreement**

46.     The Individual Defendants violated this trust not only through their attempt to seize Kulick's economic interests in SLP, but also by their effort to eviscerate the Economic Interests granted to Kulick in separate LLC agreements.

47.     Each of the deals in Gamma's multifamily portfolio has a property-specific limited liability company (or general partner) formed to purchase the asset, manage the deal's financing, and run the day-to-day operations of the property.  For some of the deals in Gamma's multifamily portfolio, SLP is itself directly involved in the organizational chart of the deal, and in others, it is not.

48.     Where SLP is not involved, the deal-specific managing LLC has a combination of the same five individuals as members, each of whom has a direct economic interest in the entity by virtue of their membership, according to the deal documents:  Richard Kalikow, Jon Kalikow, Illuzzi, Nguyen and Kulick.

49.     For example, in connection with two multifamily properties in Charlotte, North Carolina known as Stone Ridge and Whitehall, Gamma formed an LLC called GRE Charlotte GP LLC.[2]  Pursuant to this LLC Agreement, Kulick holds an Economic Interest entitling him to 33.333% of the entity's net profits and cash available for distribution.

50.     Specifically, the GRE Charlotte GP LLC Agreement defines "Economic Interest" as "the right, expressed as a percentage, to share in the allocation of one or more of the Company's allocable items including, without limitation, Net Profits and Net Losses, and/or in distributions of the Company's assets, in each case pursuant to this Agreement or the [Delaware Limited Liability Company] Act . . . ."

---

[2] Defendants failed to submit this agreement in connection with their Motion to Dismiss.  *See* ECF No. 18.

51.     Kulick also holds a 33.333% Management Interest in GRE Charlotte GP LLC, defined as the "right to participate in the management of the business and affairs of the Company as a Member, expressed as a percentage, including the right to vote on, consent to, or otherwise participate in, any decision of action of or by the Members hereunder or under the Act . . . ."

52.     The other two members of GRE Charlotte GP LLC, Illuzzi and Nguyen, each hold 33.333% of the LLC's Economic Interests and Management Interests.

53.      Significantly, the GRE Charlotte GP LLC Agreement does not provide for a member's involuntary removal, and expressly prohibits members from voluntarily withdrawing from the LLC without the consent of a majority of the members.  Instead, the agreement defines "Involuntary Withdrawal" as a member's "Death or Disability," and makes clear that "[n]o Class A Member shall be permitted to make a Voluntary Withdrawal without the consent of the Majority In Interest of the Class A Members . . . ."

54.     The Stone Ridge and Whitehall properties were sold in March 2020, creating net profits for GRE Charlotte GP LLC that, under the terms of the GRE Charlotte GP LLC Agreement, should have been distributed to its members in proportion to their Economic Interests.

55.     Instead of distributing the net profits of GRE Charlotte GP LLC to its members, the Individual Defendants diverted those funds to another Gamma-controlled corporate entity in order to avoid paying Kulick his share.

**The Remaining Non-SLP Properties:  The Partnership Properties**

56.     After the sale of the Stone Ridge and Whitehall properties in March 2020, Gamma's multifamily portfolio consisted of fifteen multifamily properties.  Of those fifteen deals, SLP is not involved in eleven. These eleven deals are known by Gamma respectively as Elan, Parmer, Carrington (the three together known as "Tech"); Windsor Falls; Highland Lake; Pavilion at Lake

Eve (or "Orlando Investor"), The Cove, The Clarion, The Aventine (or "Greenville"), Springfield, and Laurel View (all collectively, "The Partnership Properties"). *See* ECF No. 18, Exs. 3-11 (Partnership Properties' LLC Agreements).

57. Critically, Kulick remains a member of the managing LLC for each of The Partnership Properties.

**Kulick's Negotiated Involuntary Withdrawal from Gamma**

58. With the lion's share of the multifamily portfolio's profits on the horizon, Defendants launched their plan to take Kulick's share of the deals' economics for themselves.

59. In mid-2019, Jon and Richard Kalikow began to insert themselves to an unprecedented degree in the operation of the multifamily portfolio. Specifically, Jon Kalikow demanded the right to edit quarterly investor letters, began contacting third parties involved in portfolio properties' financing, and started inserting his lending business employees into the multifamily business.

60. During 2019, Richard Kalikow unilaterally fired a property management firm that was running leasing and operations, without consulting Kulick. This would have caused irreversible harm to the property and its investors. Kulick and his junior team members were shocked but Kulick was able to preserve the relationship at the property.

61. Jon and Richard Kalikow's sudden interest in Gamma's thriving multifamily business had everything to do with the stagnation of Gamma's lending business, which Jon Kalikow led. Specifically, by 2019, Gamma's lending business was not only failing to generate new deals, but over 75% of its existing deals were in default. Moreover, Gamma's involvement in the development of a Sutton Place condominium building was mired in lawsuits over zoning restrictions and alleged conflicts of interest. In Gamma's multifamily business, Jon and Richard

Kalikow saw an opportunity to claim credit for Kulick's successes – which had already generated $10 million in five years – just as Gamma prepared to reap the benefits of these deals through its carried interest income profits.

62. As Jon and Richard Kalikow's efforts to sideline Kulick intensified, the Individual Defendants began a coordinated attempt to freeze Kulick out of the multifamily business. Specifically, Nguyen told Kulick he no longer would co-sign loans with him, which was his basic role in the business, noting that "the investors can pay the increased coupon, they won't realize it anyway." The Individual Defendants' misconduct included advising property managers not to deal with Kulick, excluding Kulick from critical decisions relating to the multifamily portfolio, and undermining new projects Kulick proposed by imposing unreasonable conditions. In these ways, the Individual Defendants began slowly trying to seize Kulick's business for their own benefit.

63. In a harbinger of Kulick's ouster, Jon and Richard Kalikow proposed to Kulick on multiple occasions that the Kalikows could cut Illuzzi and Nguyen out of SLP and/or future deals. Kulick refused the Kalikows' offer.

64. Defendants' efforts to force Kulick out worked. Given that Jon Kalikow's increasing interference with the multifamily business had compromised Kulick's ability to conduct his duties as SLP's Administrative Member, and in light of Jon Kalikow's expressed willingness to undercut some of Gamma's most important partners, Kulick began to explore leaving Gamma in late 2019. In mid-February 2020, Kulick raised the possibility that he could make an Involuntary Withdrawal from SLP to allow for his Carried Interest Income Economic Interest to be purchased by the remaining Members pursuant to Section 8.2 of the LLC Agreement.

65. Defendants refused to buy out Kulick's interests – and, instead, secretly decided to simply take those interests for themselves.

66. The terms of Kulick's Involuntary Withdrawal were negotiated during a February 27, 2020 meeting of the SLP Members.

67. During this meeting, the SLP Members determined that Kulick would resign as Administrative Member of SLP effective March 31, 2020. The SLP Members also informed Kulick that, pursuant to the LLC Agreement, Kulick's Involuntary Withdrawal would terminate his Class A and Class B Membership Interests.

68. Critically, the SLP Members made clear during the February 27, 2020 meeting that Kulick would *not* lose his Class C Membership Interests upon his departure. Instead, the SLP Members expressly stated that Kulick's withdrawal from SLP was an Involuntary Withdrawal.

69. On March 19, 2020, Kulick wrote an email to memorialize this agreement, saying, "Pursuant to our conversation on 2/27, we agreed that my 12.5% stake in SLP remains intact . . .."

70. On March 20, 2020, Jon Kalikow responded in an email confirming that Kulick would retain his Class C Membership Interests, saying:

> You are currently a Class A Member, a Class B Member and a Class C Member of [SLP], as well as the current 'Administrative Member.' Once your employment with Gamma Real Estate ends, you will lose your Class A Membership rights (voting rights in [SLP]), your Class B Membership rights (rights to a percentage of fee income), and will no longer be the designated 'Administrative Member.' Nonetheless, as discussed, absent a termination 'for cause', and unless the other members elect to buy out your Class C Membership Interests, you will retain your 12.5% Class C Membership Interests (rights to receive promote/carried interest income available for distribution).

71. Jon Kalikow's March 20, 2020 email also confirmed that Kulick's departure from SLP would not affect his membership in the other portfolio companies' managing entities: "To

the extent you are a member of the GP in the [multifamily] properties we currently still own, you will remain a member of that GP, with the same voting rights that you have today."

72.     What Jon Kalikow did not tell Kulick, however, is that the Defendants planned to usurp Kulick's *economic rights* in the Partnership Properties.

73.     Critically, Defendants did not claim at any time prior to Kulick's departure on March 31, 2020 that his withdrawal was a for-Cause termination, or that there was any Cause.

74.     Kulick understood his withdrawal from Gamma to be an amicable separation; indeed, in the weeks leading up to his departure, Kulick participated in drafting communications regarding his separation from Gamma and worked to transition his responsibilities to others at Gamma.

75.     Believing that Gamma was acting in good faith, Kulick even asked Gamma to defer a $150,286 payment, representing a portion of the economics owed to Kulick from Stone Ridge and Whitehall from its originally scheduled wire date in mid-March to April 15, 2020.

76.     Kulick continued to manage Gamma's multifamily portfolio and to fulfill his duties as SLP's Administrative Member until his negotiated withdrawal date of March 31, 2020.  In light of his ongoing membership in The Partnership Properties, Kulick retained copies of relevant files to ensure that he would have access to the documents underlying these properties' financing and management.  For example, because he is the guarantor on many of the loans financing these deals, Kulick retained copies of the loan documents as a record of his obligations, rights and potential liabilities in connection with these transactions.

77.     Gamma not only authorized Kulick to retain these files, but affirmatively confirmed that he retained his rights as a member of the respective general partners of The Partnership Properties.

78.     Moreover, as a Member of SLP, Kulick had the right to possess Confidential Information as defined by Section 9.4(a) of the LLC Agreement.

**Gamma's Purported Retroactive "Termination" of Kulick's Membership Interests**

79.     On April 6, 2020, Kulick joined Beacon Real Estate Group, LLC in Florida.

80.     By letter dated April 13, 2020, two days before the date Gamma had agreed to wire $150,286 in proceeds due to Kulick from Stone Ridge and Whitehall, counsel for GRE and SLP informed Kulick that they possessed "evidence that, during the term of [Kulick's] employment, [Kulick] engaged in conduct that constitutes Cause as defined under the [LLC Agreement]." Specifically, the letter asserts that, during his employment, Kulick "wrongfully used, disclosed, and took the Companies' highly confidential, proprietary and/or trade secret information." Annexed hereto as Exhibit 1 is a true and correct copy of the April 13, 2020 Letter fr. C. Goodman to R. Kulick (the "April 13 Letter").

81.     Gamma did not send Kulick the $150,286 due to be wired on April 15, 2020, and instead improperly retained those funds.  Defendants' failure to pay Kulick the $150,286 – which represented economic interests in non-SLP controlled properties Stone Ridge and Whitehall – further belie Defendants' recent assertions that they have supposedly not taken his economic interests in non-SLP projects.

82.     The assertions in the April 13 Letter were objectively false and utterly meritless.

83.     Notwithstanding the fact that Kulick's Involuntary Withdrawal from SLP had occurred nearly two weeks earlier – and that Gamma's counsel's letter states that "Your Class A Membership interests were ***terminated on March 31, 2020, the effective date of your Involuntary Withdrawal***," the April 13 Letter purported to transform his withdrawal retroactively as one for

"Cause" for purposes of his Class C Membership Interests. *See* April 13 Letter, p. 2 (emphasis supplied).

84. Yet, on the basis of these false, meritless and inconsistent claims, the April 13 Letter purported to terminate Kulick's Class C Membership Interests – which, under the clear terms of the LLC Agreement, had been automatically converted to a Carried Interest Income Economic Interest on March 31, 2020, almost two weeks prior.

85. Defendants' belated attempt to concoct baseless allegations of misconduct weeks after Kulick's negotiated departure was a thinly-veiled ploy to usurp Kulick's 12.5% share of the Carried Interest Income Economic Interest granted to him by the LLC Agreement in some of the multifamily portfolio properties.

86. Defendants' purported "termination" of Kulick's Carried Interest Income Economic Interest should be deemed void as a matter of law.

87. Critically, Kulick retains both his Managing Member status and his Economic Interests in the LLC entities associated with The Partnership Properties, regardless of the purported "termination" of his interests in SLP.

88. On information and belief, in order to avoid paying Kulick in accordance with his Economic Interests in the LLC entities associated with The Partnership Properties, the Individual Defendants have funneled cash available for distribution and net profits to another GRE-controlled corporate entity.

89. Because Kulick has been excluded from any decisions relating to the financial affairs of The Partnership Properties, Kulick does not know the amount of money that has been diverted from The Partnership Properties' managing LLCs, which Gamma-affiliated entity

received the wrongfully transferred funds, or the current operational status and financial position of these properties.

90. The transfer of funds from The Partnership Properties' managing LLCs violated the terms of the relevant LLC Agreements.

91. Even if the transfer of funds from The Partnership Properties' managing LLCs was somehow permitted by the relevant LLC Agreements (which it was not), the Individual Defendants engaged in self-dealing transactions by funneling money to an entity they controlled in violation of their fiduciary duties.

92. In addition, the Individual Defendants intentionally have withheld information relating to the financing and operations of The Partnership Properties, notwithstanding Kulick's entitlement to this information as a member of The Partnership Properties' managing LLCs.

93. For as long as Kulick has been a member of each of The Partnership Properties' managing LLCs, he received weekly performance reports regarding the properties' operations and capital expenditures and monthly ownership reports detailing the properties' financial conditions.

94. The information in these reports is essential to decisions regarding the properties' management. Indeed, without this information, Kulick cannot discharge his duties as a managing member of the LLCs.

95. Gamma's decision to oust Kulick and freeze him out of decisions relating to the management of these properties also endangers the profitability of these projects, as no one at Gamma has experience as an operator or seller of multifamily properties. Gamma's inexperience risks a drastic diminution in asset value that jeopardizes not only Kulick's interests, but those of investors in the deals.

96.     Since Gamma's attempt to terminate Kulick's interests in SLP, Defendants have rejected Kulick's requests for the weekly and monthly property reports and have directed property managers not to provide him with this information.

97.     Kulick is uniquely harmed by the Defendants' refusal to provide him with information to which he is entitled as a managing member, because he is listed as a guarantor on the loans financing The Partnership Properties. If the Individual Defendants were to cause these loans to default without Kulick's knowledge, then Kulick would be blacklisted by lenders for his failure to address the LLCs' financial distress, damaging his reputation and hindering his ability to finance future projects.

98.     Kulick, through counsel, responded to Gamma's letter on April 28, 2020. Annexed hereto as Exhibit 2 is a true and correct copy of the April 28, 2020 Letter fr. A. Zeisler to C. Goodman (the "April 28 Letter"). No response has been received.

## FIRST CAUSE OF ACTION

### BREACH OF LLC AGREEMENT
### (as to defendants SLP, GF Limited Partner and JV Management)

99.     Kulick repeats and realleges each and every allegation contained in the above paragraphs of the Complaint as if fully set forth herein.

100.    The LLC Agreement was a binding and enforceable contract between GF Limited Partner, JV Management and Kulick.

101.    Kulick performed his obligations pursuant to the terms of the LLC Agreement.

102.    Kulick's March 31, 2020 withdrawal from SLP was an Involuntary Withdrawal under the terms of the LLC Agreement.

103. In relevant part, section 8.1(c) of the LLC Agreement provides that, "***From and after the date*** of any Involuntary Withdrawal, the Class C Membership Interest of the Withdrawing Member ***shall automatically be converted into an Economic Interest*** . . . ."

104. Accordingly, upon Kulick's Involuntary Withdrawal on March 31, 2020, his Class C Membership Interests were automatically converted into an Economic Interest.

105. By purporting to belatedly change Kulick's negotiated Involuntary Withdrawal to a termination for "Cause," and thereby purporting to terminate Kulick's Class C Membership Interests, defendants GF Limited Partner and JV Management breached the LLC Agreement.

106. By purporting to belatedly change Kulick's negotiated Involuntary Withdrawal to a termination for "Cause," and thereby purporting to terminate Kulick's Class C Membership Interests, defendants GF Limited Partner and JV Management also breached the implied covenant of good faith and fair dealing inherent in all contracts under New York law.

107. As a result of defendants GF Limited Partner and JV Management's breaches of the LLC Agreement, Kulick is entitled to an award of damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

### BREACH OF FIDUCIARY DUTY
### (as to defendants GF Limited Partner and JV Management)

108. Kulick repeats and realleges each and every allegation contained in the above paragraphs of the Complaint as if fully set forth herein.

109. Pursuant to the LLC Agreement, defendants GF Limited Partner and JV Management owed a fiduciary duty to SLP's Members, including Kulick.

110. Kulick trusted defendants GF Limited Partner and JV Management to act in good faith in their dealings with him.

111. Defendants GF Limited Partner and JV Management were in a position of superior knowledge with respect to Gamma's investments, assets and finances, particularly with regard to how Gamma distributed capital throughout its myriad corporate entities.

112. The duty of loyalty requires a fiduciary such as defendants GF Limited Partner and JV Management to refrain from self-interested transactions unless the terms of such a transaction are entirely fair.

113. The duty of loyalty further mandates that those in control of corporate processes do not unfairly manipulate those processes to retain such control.

114. Defendants GF Limited Partner and JV Management, through the conduct of their principals, breached their fiduciary obligations to Kulick by concealing their scheme to force Kulick out of SLP just as Gamma was preparing to collect the profits from the portfolio Kulick created; hindering Kulick's ability to manage the multifamily portfolio he had created; sabotaging Kulick's relationships with property managers and investors; and capitalizing on Kulick's reputation and experience to obtain financing that they could not have obtained otherwise while endeavoring to deprive him of his economic interests.

115. As a direct result of defendants GF Limited Partner and JV Management's breaches of their fiduciary duty, Kulick has been damaged in an amount to be proven at trial.

116. Kulick's damages for defendants GF Limited Partner and JV Management's breaches of their fiduciary duty include those incurred for the reputational harm Kulick suffered by these defendants' interference with Kulick's relationships with property managers, vendors, and investors both prior to and following his departure from Gamma.

**THIRD CAUSE OF ACTION**

**UNJUST ENRICHMENT**
**(as to GRE)**

117. Kulick repeats and realleges each and every allegation contained in the above paragraphs of the Complaint as if fully set forth herein.

118. On information and belief, GRE has received funds from The Partnership Properties' managing LLCs in which Kulick holds an economic interest.

119. On information and belief, GRE has co-mingled its funds with the funds received from The Partnership Properties' managing LLCs in which Kulick holds an economic interest.

120. As a result, GRE has been enriched at Kulick's expense.

121. GRE has been enriched unlawfully by the funds rightly belonging to Kulick.

122. Equity and good conscience require Kulick to recover said enrichment from GRE.

123. It is against equity and good conscience to permit GRE to retain all or any portion of the funds that have been diverted by GRE.

124. GRE is a third party to the contracts governing Kulick's relationship with SLP, SLP's members, and the Individual Defendants.

125. Due to the absence of a contract between Kulick and GRE, Kulick is unable to recover from GRE to the extent that GRE was enriched by funds owed to Kulick.

## FOURTH CAUSE OF ACTION

### EQUITABLE ACCOUNTING
### (as to GRE)

126. Kulick repeats and realleges each and every allegation contained in the above paragraphs of the Complaint as if fully set forth herein.

127. The New York Court of Appeals has held that an equitable accounting "is designed to require a person in possession of financial records to produce them, demonstrate how money was expended and return pilfered funds in his or her possession."

128. By virtue of their control of SLP's members and their membership in the Partnership Properties' managing LLCs, the principals of GRE were in a confidential business relationship with Kulick, through which funds were entrusted to GRE.

129. On information and belief, GRE's principals co-mingled GRE's funds with those received from The Partnership Properties' managing LLCs.

130. On information and belief, GRE possesses funds that rightfully belong to Kulick.

131. Kulick has no adequate remedy at law to force an accounting from GRE.

132. By reason of the foregoing, an equitable accounting of GRE should be ordered.

**FIFTH CAUSE OF ACTION**

**BREACH OF GRE CHARLOTTE GP LLC AGREEMENT**
**(as to Illuzzi and Nguyen)**

133. Kulick repeats and realleges each and every allegation contained in the above paragraphs of the Complaint as if fully set forth herein

134. Paragraph 3.1(b) of the GRE Charlotte GP LLC Agreement provides that Kulick has a 33.333% Economic Interest in the LLC, defined as "the right, expressed as a percentage, to share in the allocation of one or more of the Company's allocable items including, without limitation, Net Profits and Net Losses, and/or in distributions of the Company's assets, in each case pursuant to this Agreement or the [Delaware Limited Liability Company] Act . . . ." *Id.* at 4.

135. Kulick also holds a 33.333% Management Interest in GRE Charlotte GP LLC, defined as the "right to participate in the management of the business and affairs of the Company as a Member, expressed as a percentage, including the right to vote on, consent to, or otherwise

25

participate in, any decision of action of or by the Members hereunder or under the Act . . . . ." *Id.* at 5-6.

136.     Defendants Illuzzi and Nguyen each hold a 33.333% Economic Interest and Management Interest.

137.     The Stone Ridge and Whitehall properties were sold in March 2020, creating net profits for GRE Charlotte GP LLC that, under the terms of the LLC Agreement, should have been distributed to its members in proportion to their Economic Interests.

138.     Instead of distributing the net profits of GRE Charlotte GP LLC to its members, the Illuzzi and Nguyen diverted those funds to another Gamma-controlled corporate entity in order to avoid paying Kulick his share.

139.     By funneling monies owed and payable to Kulick to another Gamma-controlled corporate entity, Iluzzi and Nguyen breached the GRE Charlotte GP LLC Agreement.

140.     As a result, Kulick has been damaged in an amount to be proven at trial.

### SIXTH CAUSE OF ACTION

#### BREACH OF FIDUCIARY DUTY
#### (as to the Individual Defendants)

141.     Kulick repeats and realleges each and every allegation contained in the above paragraphs of the Complaint as if fully set forth herein.

142.     Kulick owns a management interest and an economic interest in the managing entities of each of The Partnership Properties.

143.     Pursuant to the LLC agreements and/or operating agreements of the managing entities of The Partnership Properties, defendants Richard Kalikow, Jon Kalikow, Illuzzi and Nguyen owe a fiduciary duty to Kulick.

144.     The Partnership Properties' managing LLCs have received funds that, pursuant to the LLC Agreements, should have been distributed to the Partnership Properties' members in accordance with their economic interests.

145.     Instead, the Individual Defendants have funneled those funds to another corporate entity in order to render Kulick's economic interests in The Partnership Properties' managing LLCs worthless.

146.     Because of the Individual Defendants' refusal to provide information relating to The Partnership Properties' financial affairs, Kulick does not have information regarding the amounts of the funds diverted, or which Gamma-controlled entity currently has the funds in question.

147.     On information and belief, the Individual Defendants breached their fiduciary duty to Kulick by engaging in self-dealing transactions designed to avoid paying Kulick in accordance with his Economic Interests.

148.     By intentionally withholding information relating to the financing and operations of The Partnership Properties, the Individual Defendants breached their fiduciary duties to Kulick.

149.     As a result of these breaches, Kulick has been damaged in an amount to be determined at trial.

150.     Kulick's damages include not only his unpaid share of Economic Interest, but the reputational harm he suffered through, *inter alia*, the Individual Defendants' instructions to property managers to refuse Kulick's request for The Partnership Properties' weekly and monthly reports.

**SEVENTH CAUSE OF ACTION**

**AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**
**(as to all Defendants)**

151. Kulick repeats and realleges each and every allegation contained in the above paragraphs of the Complaint as if fully set forth herein.

152. As set forth herein, defendants GF Limited Partner and JV Management and the Individual Defendants have a fiduciary relationship with Kulick.

153. Defendants GF Limited Partner and JV Management and the Individual Defendants breached their fiduciary duties to Kulick by, *inter alia*, effecting their scheme to force Kulick out of SLP just as Gamma was preparing to collect the profits its multifamily portfolio; hindering Kulick's ability to manage the multifamily portfolio; sabotaging Kulick's relationships with property managers and investors; capitalizing on Kulick's reputation and experience to obtain financing that they could not have obtained otherwise while endeavoring to deprive him of his economic interests; engaging in self-dealing transactions designed to avoid paying Kulick in accordance with his Economic Interests in The Partnership Properties; and by intentionally withholding information relating to the financing and operations of The Partnership Properties.

154. On information and belief, Defendants, including but not limited to non-fiduciaries GRE and SLP, knowingly participated in these breaches of fiduciary duty by receiving funds from The Partnership Properties and by co-mingling these improperly received funds with those of other GRE-controlled entities.

155. As a result, Kulick has been damaged in an amount to be proven at trial.

### EIGHTH CAUSE OF ACTION

### DECLARATORY JUDGMENT
### (as to Individual Defendants)

156. Kulick repeats and realleges each and every allegation contained in the above paragraphs of the Complaint as if fully set forth herein.

157. Kulick remains a managing member of entities controlling The Partnership Properties and retains his share of the associated economic interests.

158. Kulick is the guarantor on many of the loans financing The Partnership Properties.

159. The Individual Defendants are co-managing members of the entities controlling The Partnership Properties and, as such, owe fiduciary duties to Kulick.

160. In order to avoid paying Kulick in accordance with his Economic Interests in the LLC entities associated with The Partnership Properties, the Individual Defendants have funneled cash available for distribution and net profits to another GRE-controlled corporate entity.

161. Because Kulick has been excluded from any decisions relating to the financial affairs of The Partnership Properties, Kulick does not know the amount of money that has been diverted from The Partnership Properties' managing LLCs, which Gamma-affiliated entity received the wrongfully transferred funds, or the current operational status and financial position of these properties.

162. On information and belief, the transfer of funds from The Partnership Properties' managing LLCs violated the terms of the relevant LLC Agreements.

163. Alternatively, to the extent the transfer of funds from The Partnership Properties' managing LLCs was somehow permitted by the relevant LLC Agreements, the Individual Defendants engaged in self-dealing transactions by funneling money to an entity they controlled in violation of their fiduciary duties.

164. In violation of their fiduciary duties, defendants Richard Kalikow, Jon Kalikow, Illuzzi and Nguyen intentionally have withheld information relating to these projects from Kulick – effectively leaving Kulick liable on loans, while depriving him of his economic share of the deals.

165. Kulick is entitled to a declaratory judgment: (1) confirming his contractual entitlement to his economic interests in The Partnership Properties; (2) confirming his rights as a managing member in The Partnership Properties; and (3) requiring the Individual Defendants to indemnify Kulick for any liabilities created by the Individual Defendants' breaches of their fiduciary duties.

## PRAYER FOR RELIEF

WHEREFORE, Kulick respectfully requests that this Court enter a Judgment:

(a)     In favor of Kulick and against defendants SLP, GF Limited Partner and JV Management on the First Cause of Action for breach of the LLC Agreement;

(b)     In favor of Kulick and against defendants GF Limited Partner and JV Management on the Second Cause of Action for breach of fiduciary duty;

(c)     In favor of Kulick and against GRE on the Third Cause of Action for unjust enrichment;

(d)     In favor of Kulick and against GRE on the Fourth Cause of Action for equitable accounting;

(e)     In favor of Kulick and against Illuzzi and Nguyen on the Fifth Cause of Action for breach of the GRE Charlotte GP LLC Agreement;

(f)     In favor of Kulick and against the Individual Defendants on the Sixth Cause of Action for breach of fiduciary duty;

(g)     In favor of Kulick and against all Defendants on the Seventh Cause of Action for aiding and abetting breach of fiduciary duty;

(h)     Declaring that Kulick retains his contractual entitlement to his economic interests and management rights in The Partnership Properties;

(i)　　Declaring that the Individual Defendants are required to indemnify Kulick for any liabilities created by Defendants' breaches of their fiduciary duties;

(j)　　Awarding Kulick compensation for any and all damages, injury or harm, including his reasonable attorneys' fees and costs; and

(k)　　Ordering such other relief as this Court deems necessary and proper.

**DEMAND FOR JURY TRIAL**

Kulick hereby makes a demand pursuant to Federal Rule of Civil Procedure 38 for a trial by jury on all issues triable to a jury.

Dated: New York, New York
　　　　August 3, 2020

ZEISLER PLLC


By: ___/s/ Aaron M. Zeisler_____
　　　Aaron M. Zeisler
　　　Meghan H. Sullivan
800 Third Avenue, 28th Floor
New York, New York 10022
Tel: (212) 671-1921
aaron@zeisler-law.com
meghan@zeisler-law.com

*Attorneys for Plaintiff Richard Kulick*