UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                               :

RICHARD KULICK,                     :   No: 1:20-cv-3582 (MKV)
                               :
                  Plaintiff,    :   **Counterclaims and**
                               :   **And Third-Party Complaint**
         against            :
                               :
GAMMA REAL ESTATE LLC, GRE JV SLP LLC,   :
GAMMA FUNDING SPECIAL LIMITED PARTNER   :
LLC, JV MANAGEMENT LLC, N. RICHARD       :
KALIKOW, JONATHAN KALIKOW, JOHN        :
ILLUZZI, and VAN NGUYEN,              :
                               :
                    Defendants.   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

                               :
GAMMA REAL ESTATE LLC, GRE JV SLP      :
LLC, GAMMA FUNDING SPECIAL LIMITED    :
PARTNER LLC, JV MANAGEMENT LLC       :
                               :
   Counterclaim-Plaintiffs/Third-Party Plaintiffs, :
                               :
          against              :
                               :
RICHARD KULICK                    :
                               :
            Counterclaim-Defendant,   :
                               :
                               :
BEACON REAL ESTATE GROUP LLC and     :
CARLOS E. IMERY                :
                               :
            Third-Party Defendants. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

        Gamma Real Estate LLC ("GRE"), GRE JV SLP LLC ("SLP"), Gamma Funding Special

Limited Partner LLC ("Gamma Funding"), JV Management LLC ("JV Management," together

with GRE, SLP, Gamma Funding ("Counterclaim-Plaintiffs" or "Third-Party Plaintiffs"), by

their attorneys, Herrick, Feinstein, LLP, for their Counterclaims against Plaintiff Richard Kulick ("Kulick" or "Plaintiff") and Third Party Claims against Beacon Real Estate Group LLC ("Beacon") and Carlos E. Imery ("Imery"), respectfully allege as follows:

## COUNTERCLAIMS & THIRD-PARTY COMPLAINT

### NATURE OF THE ACTION

1.      The Counterclaims and Third-Party Action arise from an internal investigation through which GRE, SLP and its members, Gamma Funding and JV Management (collectively, "Counterclaim-Plaintiffs" or "Third-Party Plaintiffs"), discovered that Kulick —entrusted with the position of Administrative Member of SLP and "Chief Investment Officer, Multifamily" of GRE — stole and wrongfully disclosed their confidential information to further the interests of, and to gain a competitive advantage for, Third-Party Defendant Beacon Real Estate Group, LLC ("Beacon") — a competing real estate venture that Kulick formed with Imery, unbeknownst to Counterclaim-Plaintiffs, during his employment.

2.      Over time, GRE and SLP's members because dissatisfied with Kulick's performance.  In February 2020, GRE, with the participation, support and agreement of JV Management and Gamma Funding, decided it was time to move on and communicated to Kulick that it was terminating his employment effective February 29, 2020.  Kulick requested that he be allowed to stay on in his position as "Chief Investment Officer, Multifamily" for GRE and Administrative Member of SLP for a period of additional months, and was permitted to remain through March 31, 2020.  Kulik also asked about his Class C Membership Interests in SLP and was told that he would retain them absent "Cause" and subject to the terms of SLP's Limited Liability Company Agreement ("SLP LLC Agreement").

3.       Upon Kulik vacating his office on March 31, 2020, GRE immediately discovered evidence that during his last month of employment and possibly before, Kulick engaged in theft,

misappropriation of assets and resources, usurpation of investment opportunities, and unethical and unlawful conduct. Upon further investigation, it was discovered that Kulick, while employed by and acting on behalf of GRE and SLP, began performing business for Beacon using GRE and SLP templates, models and other "Confidential Information," as defined by the SLP LLC Agreement and subject to GRE's employment policies, through GRE's offices and e-mail accounts, sourced deals and partners by misrepresenting GRE's interest and participation to third-parties, conducted work for Beacon using GRE's employees, and usurped corporate opportunities by redirecting them to Beacon.

4.      For example, in the weeks *before* his employment terminated on March 31, 2020 and the April 6th date Kulick now alleges (Amended Compl. ¶ 79) to have first joined Beacon, Kulick wrote to Beacon and Imery using his GRE e-mail account:

- "This is nice *but if you prefer Gamma style, take it!* I am THRILLED to be working with both of you" (on March 10, 2020);

- "[A]ttached please find a *multi-property acquisition model* to use as a template. Once you have had a chance to review, let's talk" (on March 12, 2020); and

- "*I need you to put these deals into the Gamma models and create a presentation*" (on March 17, 2020).

These e-mails are just the tip of the iceberg.

5.      GRE and SLP plainly did not approve or authorize Kulick to use their confidential information and resources to advance his own self-interests or Beacon's competitive business, or to communicate with third-parties under false pretenses. Kulick's conduct breached GRE's employment policies, the terms of the SLP LLC Agreement, and his duty of loyalty and fiduciary duties to his employer and fellow members of SLP under the law.

6.      As a result of this discovery, on his last day of employment, and after further investigation, GRE, SLP and its members acted prudently and appropriately by assigning

"Cause" to the termination of Kulick's employment and followed the express terms of the SLP LLC Agreement by terminating and redeeming his Class C Membership Interests in SLP for the price of $.01 effective March 31, 2020.

7.      Moreover, Beacon and Imery encouraged and substantially assisted Kulick's breaches of contract and fiduciary duty, and theft of GRE and SLP's confidential business information, which, upon information and belief, it continues to use as its own.  For example, on March 18, 2020, Beacon wrote to Kulick at his then-GRE e-mail account with respect to a prospective Beacon deal: "I just finished the base skeleton for a multi-property model for our MF [Multi Family] acquisitions, *based on Gamma's original model . . . .* I'll send an update tomorrow with Domain & Gateway's numbers applied to this model."

8.      Through their Counterclaims and Third-Party Complaint, GRE, SLP, Gamma Funding and JV Management seek to, among other things, compel Kulick and Beacon to return all confidential information, disgorge all salary and remuneration paid to Kulick during his period of disloyalty and the profits obtained or to be acquired by Beacon, Kulick and Imery through their wrongful conduct, and  compensate them for all damages caused by their tortious, deceitful and disloyal conduct.

## THE PARTIES

9.      Counterclaim / Third-Party Plaintiff SLP is a Delaware limited liability company having a principal place of business at 101 Park Avenue, 11th floor, New York, New York 10178, whose existing members include Gamma Funding and JV Management.

10.      Counterclaim / Third-Party Plaintiff GRE is a Delaware limited liability company having a principal place of business at 101 Park Avenue, 11th floor, New York, New York 10178.

- 4 -

11. Counterclaim / Third-Party Plaintiff Gamma Funding is a Delaware limited liability company having a principal place of business at 101 Park Avenue, 11th floor, New York, New York 10178.

12. Counterclaim / Third-Party Plaintiff JV Management is a Delaware limited liability company doing business in New York as JVP Management and having a principal place of business at 767 Fifth Avenue, 12th Floor, New York, NY 10153.

13. Plaintiff / Counterclaim-Defendant Kulick is an individual who, upon information and belief, changed his domicile from New York to Florida contemporaneously with or immediately prior to the commencement of this action.

14. Upon information and belief, Third-Party Defendant Beacon is a Florida Limited Liability Company with a principal place of business at 201 Alhambra Cir, Suite 1205, Coral Gables, Florida 33134.

15. Upon information and belief, Third-Party Defendant Imery is a Managing Partner of Beacon and resides at 3225 S Le Jeune Rd., #B, Boca Raton, FL, 33434-3590 or 20032 Waters Edge Ln., Apt. 1404, Boca Raton, FL 33434-3590.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1367 because the Counterclaims and third-party claims asserted herein are so related to the claims in Plaintiff/Counterclaim-Defendants' Complaint that they form part of the same case or controversy under Article III of the United States Constitution.

17. In addition, an actual and substantial controversy exists between the Counterclaim-Plaintiffs and Counterclaim-Defendant within the meaning of 28 U.S.C. 2201 that is of sufficient immediacy and reality to warrant declaratory relief.

18.    In addition, this Court has subject matter jurisdiction over Counterclaim-Defendant Richard Kulick and Third-Party Defendants Beacon and Imery under 28 U.S.C. § 1332 as this is a dispute between citizens of this State and citizens of a foreign state.  The amount in controversy exceeds $75,000, exclusive of interest and costs.

19.     The United States District Court for the Southern District of New York has personal jurisdiction over Counterclaim-Defendant Richard Kulick because he has consented to the jurisdiction of this Court through his action.

20.    This Court also has personal jurisdiction over the Counterclaim-Defendant and Third-Party Defendants pursuant to CPLR 302(a)(1), (2) and (3) because they: (1) transacted business within the State of New York that gave rise to the causes of action alleged herein, (2) committed tortious acts within the State of New York; (3) committed tortious acts that caused injury to a person or property within the State of New York, and they regularly solicit and do business in the State of New York and engage in a persistent course of conduct in the State of New York; and (4) committed tortious acts that caused injury to a person or property within the State of New York, and expected, or reasonably should have expected, those tortious acts to have consequences in the State of New York, and derive substantial revenue from interstate or international commerce.

21.    As set forth herein, while employed by GRE and SLP in New York, Kulick, with the assistance of Imery, engaged in transactions on behalf of Beacon that gave rise to the causes of action alleged against him, by breaching: (i) his fiduciary obligations to SLP and GRE; (ii) the SLP LLC Agreement; and (iii) GRE's Employment Manual.

22.    Kulick, Beacon, and Imery committed tortious acts within the State of New York. Additionally, Kulick, Beacon, and Imery committed tortious acts that caused injury to the

- 6 -

Counterclaim-Plaintiffs within the State of New York.  There can be no disputing that Kulick, Beacon, and Imery knew, or reasonably should have expected, those tortious acts would have consequences in New York. Moreover, Beacon, through its website, and various electronic, telephone, and face-to-face communications regularly solicits and does business in the State of New York, and engages in a persistent course of conduct in New York.  Further, Beacon, which, according to its website, specializes in "U.S. Commercial Real Estate" and, in fact, owns properties throughout the Southeast portion of the United States, derives substantial revenue from interstate commerce.  Moreover, with offices in the USA, Guatemala, and Venezuela, Beacon also derives substantial revenue from international commerce.

23.     The claims at issue arise out of or relate to Kulick, Beacon, and Imery's contacts with the State of New York, and they purposefully availed themselves of the privilege of doing business in New York and therefore Kulick, Beacon, and Imery could reasonably foresee being haled into the Courts of New York.  Accordingly, the exercise of jurisdiction over Kulick, Beacon, and Imery comports with the traditional notions of fair play and substantial justice.

24.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), (3) since a substantial part of the events giving rise to the claims occurred in this district.

**FACTUAL ALLEGATIONS COMMON TO THE COUNTERCLAIMS AND THIRD-PARTY COMPLAINT**

**I.     Background On GRE**

25.     GRE is a boutique commercial real estate firm based in New York City.  Owned and operated by the Kalikow family, GRE (including its wholly-owned predecessors) boasts a forty-five-year history of success as both lenders and owners of commercial real estate.

26.     GRE (acting through affiliated entities under the Gamma banner) runs three principal operations: (i) "Gamma Lending" (specializing in direct loans for commercial real

estate assets throughout the United States, and has funded and serviced several billion in real estate debt across hundreds of loans), (ii) "Gamma Multifamily" (through which it and its predecessor entities have owned and developed more than 25,000 residential units since the 1970s), and (iii) "Gamma Development" (through which it aims to create value nationwide with development projects in markets with idiosyncratic qualities or high barriers to entry).

27.    In connection with its multi-faceted business, GRE has expended significant resources developing financial models, compiling and organizing complex financial information, data, and records, templates, forecasts, public relations and public affairs campaigns, media materials, budgets, practices, concepts, strategies, techniques, designs, marketing and business strategies and other information relating to the diligence, acquisition, financing, development, and marketing of assets and business operations of GRE and other Gamma entities and their investors and partners.

28.    A foundation of GRE's business is maintaining the confidentiality amongst its personnel and employees of this confidential information, utilizing systems and resources for proper business purposes, and prohibiting the solicitation of non-company business for any use or personal gain.

29.    Accordingly, GRE and SLP require all employees and personnel operating under the Gamma banner to acknowledge and agree to the terms of their Employment Manual which, among other things, explains that (i) they are employees at will, (ii) the disclosure of confidential information violates their Code of Conduct, (iii) the Internet may not be used for personal gain and the solicitation of non-company business or any use of the Internet for personal gain is strictly prohibited, (iv) e-mail communications may not violate this Internet usage policy, employees are to disclose information from e-mail system only to authorized persons, e-mail

information is limited to those with a need to know the specific content thereof, the use of e-mail systems to make unauthorized transmissions of computer files may result in immediate termination and appropriate legal action, and Gamma reserves the right to monitor the e-mail system to ensure that these policies are being followed and it is being used for proper business purposes.

30. Gamma Multifamily operations were formed and jointly funded by GRE (acting through its affiliate, Gamma Funding) and its partner JV Management.

## II. GRE Hires Kulick And Kulick Agrees To Maintain Its Confidential Information

31. In 2013-2014, GRE decided to focus Gamma Multifamily operations on the Southeastern U.S. market, and together with JV Management, sought to hire someone to lead the effort.

32. At the time, Kulick requested that JV Management introduce him to members of the Kalikow family (the owners of GRE and Gamma Funding) to apply for the position.

33. JV Management relayed to the Kalikow family that Kulick represented to them that he had experience running a similar operation for another real estate firm.

34. GRE explained to Kulick the opportunities it saw in the southeastern United States, and that the position it was seeking to fill required expertise and experience with (i) capital sourcing (i.e., identifying optimal capital structures and appropriate sources and forms of financing), (ii) deal sourcing (i.e., the process of identifying investment opportunities, a business strategy and supporting business plan), (iii) property asset management, and (iv) integration of business strategy with people management and human resources practices.

35. Kulick claimed he had expertise and experience in each of these areas and touted his ability to grow the business and independently raise financial capital through relationships

and connections that he had allegedly developed over time and without retaining investment bankers and incurring fee structures to raise capital.

36. On June 8, 2015, Kulick was hired by GRE through Gamma Funding Management LP, the management company that employed all GRE employees.

37. In connection with Kulick's employment and on at least three separate occasions (including on September 6, 2016, March 15, 2018 and March 12, 2019), Kulick acknowledged that he received, and agreed to abide by the terms and conditions of GRE's Employment Manual, which applied to all employees and personnel operating under the Gamma banner.

38. Kulick specifically acknowledged and agreed, *inter alia*, that (i) his employment was terminable at will, (ii) his unauthorized disclosure of confidential information would constitute an infraction that could result in the termination of his employment, (iii) his solicitation of non-company business or any use of the Internet for personal gain was strictly prohibited, (iv) his e-mail communications would not violate this Internet usage policy, and (v) Gamma had the right to monitor his e-mails to ensure that he was following its policies and using his GRE e-mail system for proper business purposes.

39. Kulick utilized the title "Chief Investment Officer, Multifamily" of GRE in his e-mail signature, and at all relevant times during his employment with GRE and membership in SLP utilized a GRE e-mail account (rkulick@gammare.com).

### III. Gamma Funding and JV Management Appoint Kulick SLP's Administrative Member and Kulick Agrees To Maintain Their Confidential Information

40. On October 29, 2015, SLP was formed under the Delaware Limited Liability Company Act.

41. SLP's purpose is to receive fees and profit interests from, and pay expenses in connection with, "Platform Investments," defined as multifamily real estate projects located in

the Southeastern United States and other secondary markets that SLP determines to directly or indirectly sponsor.   SLP LLC Agreement § 1.3 & Art. II.

42.     SLP has three classes of members: (i) Class A Members have a Management Interest, defined as the "right to participate in the management of the business and affairs of the Company as a Member, expressed as a percentage[;]" (ii) Class B Members have a Fee Income Economic Interest, defined as the "right, expressed as a percentage, to share in distributions of Fee Income Available for Distribution;" and (iii) Class C Members have a Carried Interest Income Economic Interest, defined as "the right, expressed as a percentage, to share in distributions of Carried Interest Income Available for Distribution."  SLP LLC Agreement, Art. II.

43.     Gamma Funding and JV Management each hold a 43.75% Class A Management Interest, Class B Fee Income Economic Interest, and Class C Carried Interest Economic Interest in SLP.  *Id.* at Ex. A.

44.     As part of his compensation and based on his representations concerning his expertise and experience, Gamma Funding and JV Management agreed to grant Kulick interests in SLP.  But, since Kulick was an untested employee that had not financially contributed to SLP (including the capital required to hire teams, secure and close transactions, fund debt originations and underwriting, or complete capital stacks), Kulick was granted only a 12.5% Class A Management Interest, Class B Fee Income Economic Interest, and Class C Carried Interest Economic Interest in SLP. *Id.* at Ex. A.

45.     The SLP LLC Agreement provides that the Class A Members "may bind the Company in the ordinary course to the extent that such action is approved by the Majority in

Interest of the Class A Members," and as such, Kulick could not bind SLP without the consent of JV Management or Gamma Funding. *Id.* ¶ 5.1 (a).

46.     Kulick was designated the initial Administrative Member of SLP, who is obligated to "implement the decisions of the Class A Members." *Id.* at § 5.10. In connection therewith, Kulick was tasked with, among other things, managing and administering the process of acquiring, selling and financing Platform Investments. *Id.* § 5.10(b)(viii).

47.     The SLP LLC Agreement provides that Kulick's appointment as SLP's Administrative Member automatically terminates if he ceases to be a Class A Member of SLP. *Id.* § 5.10(c).

48.     "[I]n the case of [Kulick] only," the SLP LLC Agreement defines an "Involuntary Withdrawal" to mean his "resignation as an employee of [Gamma Funding] or its Affiliate [i.e., GRE] or the termination … of his employment for any reason or no reason." *Id.* at Art. II ("Involuntary Withdrawal").

49.     The SLP LLC Agreement provides that upon Kulick's Involuntary Withdrawal, his Class A and Class B Membership Interests automatically terminate. *See id.* §§ 8.1(a) & (b).

50.     The SLP LLC Agreement also provides that, upon Kulick's Involuntary Withdrawal, his Class C Membership Interests are automatically converted into an "Economic Interest" (and may be repurchased by SLP if the other Class A Members exercise their right to cause SLP to purchase them for "Fair Market Value" in accordance with Section 8.2 of the SLP LLC Agreement), with the following exception: "upon any Involuntary Withdrawal by [Kulick] *arising from the termination by [Gamma Funding] or its Affiliate of his employment for Cause, then [Kulick's] Class C Membership Interest shall be terminated and redeemed by [SLP] for the price of $0.01*." *Id.* § 8.1(c) (emphasis supplied).

51.     The SLP LLC Agreement defines "Cause" as follows:

"Cause" shall mean, with respect to the termination of [Kulick's] employment by [Gamma Funding] or its Affiliate,  any of the following occurrences: … (ii) [Kulick's] unethical conduct in the performance of his duties, including, without limitation, willful misconduct, gross negligence, fraud, theft, embezzlement, misappropriation of assets, or other conduct of a criminal or unethical nature; … or (v) [Kulick's] breach of any of the provisions of Section 9.4 hereof.  *Id.* Art. II ("Cause").

52.     Section 9.4(a) of the SLP LLC Agreement restricts the Member's use of SLP's

"Confidential Information," which is broadly defined therein as follows:

Each Member hereby acknowledges that while such Member is a Member of the Company, he or she will have access to confidential information and/or proprietary information about the Company and/or its clients or which does or may provide any economic, commercial or competitive advantage or benefit to the Company, including, but not limited to, investment strategies, programs or ideas, trade secrets, methods, models, passwords, access to computer files, financial information and records, forecasts, computer software programs, agreements and/or contracts between the Company and its respective clients, client contracts, prospective contracts, creative policies and ideas, public relations and public affairs campaigns, media materials, budgets, practices, concepts, strategies, methods of operations, technical and scientific information, techniques, discoveries, developments, formulas specifications, know-how, designs, inventions, marketing and business strategies and financial or business projects, and information about or received from clients and other companies with which the Company does business.  The foregoing shall be collectively referred to as "Confidential Information."  Any information that is not readily available to the public shall be considered to be Confidential Information, even if it is not specifically marked as such, unless the Company advises the member otherwise in writing.

53.      Under Section 9.4(a),  Kulick agreed (i) he "will not at any time, whether during

his or her employment with the Company or thereafter, disclose to anyone (other than in

furtherance of the business of the Company) any Confidential Information, or utilize such

Confidential Information for his or her own benefit, or for the benefit of third parties;" (ii) "to

preserve and protect the confidentiality of any third-party information similar to the Confidential Information to the same extent, and on the same basis, as the Company's Confidential Information;" and (iii) that these "confidentiality protections are in addition to, and not exclusive of, any and all other rights" including "director fiduciary duties" and "confidential information laws."

54.    On April 1, 2018, GRE reallocated payroll of employees engaged in its Multifamily business (including Kulick) from its affiliate Gamma Funding Management to SLP, because the portfolios in the Multifamily business were all SLP's Platform Investments. Notwithstanding the reallocation of payroll, for all other intents and purposes, Kulick remained an employee of GRE operating under the Gamma banner. Kulik continued to utilize his GRE electronic signature, title, and e-mail account, and communicate to third parties as a Gamma employee.

IV.    **Kulick's Termination and Involuntary Withdrawal From SLP**

55.    Over time, GRE and SLP's members became dissatisfied with Kulick's performance.  Their dissatisfaction came to a head after Kulick advocated for a salary increase in December 2019 – January 2020, notwithstanding their belief that Kulick was overpaid relative to his merit and poor performance, which had resulted in operations at a loss (including several properties underperforming net operating income by over 20% and almost all properties underperforming Kulick's underwriting -- even prior to the COVD-19 pandemic).

56.     In February 2020, GRE, with the participation, support and agreement of JV Management and Gamma Funding, decided it was time to move on and communicated to Kulick that it was terminating his employment effective February 29, 2020.

57.     Kulick requested that he be allowed to stay on in his position as "Chief Investment Officer, Multifamily" for GRE and Administrative Member of SLP for a period of additional months.

58.     Gamma, with the consent of JV Management, agreed to permit Kulick to remain through March 31, 2020, but made clear to Kulick that, although unnecessary under the law and the relevant agreements, it reserved the right to assign "Cause" to his termination.

59.     Accordingly, a March 20, 2020 e-mail to Kulick from Jonathan Kalikow — the President of GRE — explained: "[a]s you know, on 3/31 your employment with GRE will end," and that Kulick's Class A and Class B Membership Interests in SLP and his appointment as its Administrative Member will terminate at that time.   This e-mail reiterates that Kulick would retain his Class C Membership Interests only absent a termination "for cause" or an election of SLP's other members to exercise their right to cause SLP to purchase Kulick's Class C Membership Interests in accordance with the terms of Section 8.2 of the SLP LLC Agreement:

> Nonetheless, *as discussed*, *absent a termination 'for cause'*, and unless the other members elect to buy out your Class C Membership Interests, you will retain your 12.5% Class C Membership Interests ….

Compl. ¶ 50 (emphasis added).

60.     On March 31, 2020, Kulick's last day, GRE discovered evidence of cause. Upon a thorough review of Kulik's emails and GRE's files, it became clear that Kulick, while employed as SLP's Administrative Member and GRE's Chief Investment Officer, Multifamily, not only formed but also (i) began conducting business for a competing venture – Defendant Beacon – using SLP and Gamma models, templates, presentations and other confidential information, through GRE and SLP e-mail accounts and offices; (ii) sourced deals and partners by feigning

- 15 -

Gamma's interest and potential participation to third-parties; (iii) conducted diligence using Gamma's employees; and (iv) usurped and redirected corporate opportunities from Gamma and SLP to his competing venture.

**V.      Kulick's Theft, Misappropriation, and Unethical and Unlawful Conduct**

61.      Although Kulick pleads in this action that he first joined Beacon on April 6th (Amended Compl. ¶ 79), according to Beacon's electronic articles of organization filed with the Florida Secretary of State on March 25, 2020, Kulick and Imery are listed as its managers as of that date.

62.      And, as it turns out, Kulick, in coordination with Imery and others, began working behind the scenes to form their joint venture that is now known as Beacon and to advance Beacon's business much earlier.  Indeed, a review of e-mails has also uncovered Kulick's failure to disclose and diversion to Beacon of corporate opportunities concerning the acquisition of various other multifamily properties.  Although the full scope of Kulick's misconduct is not currently known (among other reasons because Defendants do not have access to Kulick's personal e-mail or Beacon's e-mail accounts), a sampling of the evidence of this misconduct is summarized below.

63.      On February 13 and 14, 2020, Kulick marketed to certain GRE investors — including Imery — a potential opportunity to acquire under the "Gamma" banner a 360-unit garden style apartment community known as Abbington Place ("Abbington") located in Greensboro, North Carolina for a purchase price of $46.8 million with a $12.7 million equity stake in the acquisition.

64.      On February 13, 2020, Imery and Kulick contacted Berkadia (an originator of debt and equity placement transactions) for assistance "siz[ing] the loan" for Abbington "as soon

as he can."  The next day, Kulick explained to Berkadia, *inter alia*, that "[t]his deal sizes to a 80% loan-to-[purchase price]".

65.     On February 17, 2020, Berkadia responded with initial underwriting feedback for Gamma.

66.     On February 18, 2020, Jonathan Kalikow explained to Kulick that due to, among other things, Abbington's location in a tertiary market, he would consider acquiring Abbington only at or less than a 60% loan-to-value ratio with no preferred returns, and absent which Kulick should discontinue efforts to acquire Abbington.

67.     That same day, Kulick wrote an e-mail to a family member acknowledging that he could not acquire Abbington Place based on his employer's desired deal terms.  But, he did not discontinue efforts to acquire Abbington.

68.     Instead, on February 19, 2020, Kulick disregarded the instructions of his employer and prepared a Letter of Intent on GRE letterhead addressed to Cushman & Wakefield ("Cushman") purporting to set forth the basic terms upon which GRE was allegedly "interested" in purchasing Abbington.  Kulick immediately sent a copy of that letter to Imery, his future partner and co-manager at Beacon.

69.     On February 20, 2020, Kulick reported externally to Kevin Donlon of Stono River Partners LLC that he submitted a bid of $47,250,000 to acquire Abbington.

70.     Over the next several days (February 20-24, 2020), Kulick directed a GRE analyst, Mack Levine ("Levine"), to obtain an insurance quote for Abbington from an insurance broker and to update a Gamma underwriting model for the Abbington acquisition.

71.     Based on Kulick's direction and believing he was still pursuing a viable GRE opportunity, Levine prepared an updated underwriting model in an excel workbook containing

multiple worksheets of underwriting summaries, financials, projections and assumptions (including an 80% loan-to-value ratio) for GRE's prospective acquisition of Abbington.

72. On February 25, 2020, the day after Kulick received Levine's updated underwriting model, Kulick sent Imery a proposed "Buyer Interview Questionnaire" for Cushman. The questionnaire contained data from Levine's underwriting model and indicated that a limited liability company formed, in part, by Kulick and Imery would acquire Abbington and that its "principals" had approved the terms of the deal.

73. On February 26, 2020, Berkadia responded with an updated loan quote and commented to Kulick and Imery that it was "prepared to jump through hoops with the agencies to get this secured for you" and would be "ready to go when *Gamma gets awarded the deal.*" (Emphasis added.) Imery was included on Kulick's e-mail communications with Berkadia and, like Kulick, failed to clarify to Berkadia that Kulick had misrepresented GRE's participation in the prospective deal and related financing.

74. That same day, Kulick sent Imery a proposed letter of intent to purchase Abbington for $49.1 million on the letterhead of "SDS Real Property Holdings, Ltd." with an address of 201 Alhambra Cir., Suite 1205, Coral Gables, Florida 33134 — Beacon's current offices.

75. On February 27, 2020, Kulick began negotiating a Memorandum of Understanding with BSRE Group, Inc., through his GRE e-mail account, concerning a prospective joint venture between a Kulick-affiliated entity and BSRE-affiliated entity to engage in the identification, evaluation, acquisition, possible renovation, operation and sale of multi-family assts.

76.    In March 2020, as the COVID-19 pandemic began to unfold in New York City, rather than faithfully serving his employer and SLP's Members during a time of crisis, Kulick continued to surreptitiously focus his efforts on generating new deals and leads for Beacon, developing Beacon's budgets and term sheets, soliciting GRE's investors for Beacon, redirecting prospective business to Beacon, and stealing Confidential Information.

77.    On March 2, 2020, Kulick requested that Michele Eschert ("Eschert") — GRE's Managing Director, Capital Raising & Investor Relations — provide him with a summary of GRE's residential real estate portfolio.

78.    In response, Eschert sent Kulick a spreadsheet entitled "Gamma Portfolio Summary" including a listing of all residential properties, their addresses, locations, year built, units, investment year and net internal rates of return.  Kulick immediately forwarded the Gamma Portfolio Summary to Imery.

79.    On March 2, 2020, Kulick received an e-mail entitled "306 Unit Off Market Opportunity" from Ridgewood Capital Advisors advising of an opportunity to acquire 10 Newbridge Apartments in Asheville, North Carolina, and containing links to spreadsheets detailing gross potential rent analysis, a return model and rent and sales comps.  Rather than advise GRE and SLP of this off-market acquisition opportunity, Kulick forwarded the e-mail to Imery and commented: "I will look into this.".

80.    On March 3, 2020, Taycora — an Atlanta-based, boutique real estate firm, specializing in the acquisition and disposition of multifamily properties throughout the Southeast — advised Kulick that it was working with a few active buyers who may be interested in purchasing apartments in Gamma's portfolio and exploring options to use joint-venture equity in new development deals.  Kulick did not advise GRE or SLP of this disposition opportunity.

- 19 -

Instead, Kulick responded that he "prefer[red] to do *new deals* with th[ese] folks" (i.e., Taycora's "active buyers"). (Emphasis added.)

81.    On March 4, 2020, Kulick forwarded to Imery, Emmely Morales ("Emmely") and Luis Aguirre ("Luis") e-mail communications between Levine and Cushman. The communications expressed GRE's interest in an opportunity to acquire an apartment community known as Magnolia Terrace in Charlotte, North Carolina. According to Beacon's website, Luis and Emmely are currently employed by Beacon as its Head of Capital and Financial Analyst, respectively.

82.    On March 4, 2020, Cushman notified Kulick of an off-market opportunity to acquire two properties in Decatur, Georgia known as Domain and Gateway. Kulick requested that Emmely expedite a financial model valuing these properties.

83.    On March 9, 2020, Kulick forwarded to Imery, Emmely, Jose M. Aguire ("Jose") (identified on Beacon's website as "Director of Finance") and Diego Morales ("Diego") (identified on Beacon's website as a "Financial Analyst") a copy of Gamma's Multifamily Curriculum Vitae for Q1 2020 to use in order to prepare Beacon's "company overview." The document contained, among other things, a synopsis of GRE's multifamily thesis and platforms, and was marked "STRICTLY CONFIDENTIAL" on every page. Kulick also suggested that they "[s]tart looking at the Gamma website for ideas for the [Beacon] website."

84.    On March 10, 2020, Kulick requested that Cushman introduce him to general contractors recommended by a multifamily advisory group for a potential multifamily development on 120 acres in Cherokee County, Georgia. Kulick never disclosed this opportunity to GRE or SLP. Believing that Kulick was communicating on behalf of GRE,

- 20 -

Cushman later introduced Kulick to Oxford Properties in an e-mail with the subject "Intro – Oxford Properties and Gamma."

85.    On March 10, 2020, Kulick forwarded to Imery, Emmely, Diego, and Luis various private GRE financial models, templates and other confidential information to expedite the formation of its competing business.

86.    For example, Kulick forwarded Eschert's internal "Gamma Portfolio Summary" and suggested Beacon use it for its pitch book and website to evidence Kulick's (rather than GRE's or SLP's) "track record".

87.    Kulick forwarded a copy of GRE's Pro-Ration File in connection with the sale of a GRE-owned apartment community in Florida.  Kulick instructed his Beacon partners and employees to "save down" the document as a "Sample Pro-Ration File" that "we can use for our acquisitions and dispositions." The excel workbook contained numerous excel worksheets including, among other things, confidential information relating to tenants in the apartment community (including information concerning tenant names, rent delinquencies, security deposits, prepaid rents, and aged receivables), as well as other private financial information concerning the property in an efficient format and model developed by Gamma for its acquisitions and dispositions.

88.    Kulick also forwarded a private GRE underwriting model in an excel workbook for the Clarion Apartments located in Decatur, Georgia.  The excel workbook contained a detailed analysis of summary and returns, inputs, financials and assumptions, unit-mix, value-add, financing, 12-month income statement, and proforma projections and assumptions in an efficient method, format and professional design developed to underwrite acquisitions.

89.    Later that day, Kulick, Emmely and Diego discussed a financial model Beacon was developing for the acquisition of the Domain and Gateway properties.  Kulick requested that they "start making a pretty model" and inquired: "*Is it easier to use the attached and corresponding presentation*?"    (Emphasis added.)    Attached to Kulick's e-mail was a confidential presentation developed by GRE in February 2020 for prospective investors for informational purposes to ascertain preliminary interest in the Abbington investment opportunity.  The presentation stated that it "may not be used for any other purpose" and every page was labeled "Strictly Confidential."  Also attached was GRE's private underwriting model developed for the Abbington opportunity.

90.    Later that day, Emmely asked Kulick: "What design line will we use?"  Emmely commented: "we could do a better job design wise, *Gamma presentations are gorgeous*." (Emphasis added.) Kulick responded that "*if you prefer Gamma style, take it!*  I am THRILLED to be working with both of you."  (Emphasis added).

91.    Also on or about March 11, 2020, Kulick was notified on his GRE e-mail of an acquisition opportunity known as Vista Verde Apartment Homes in Orlando, Florida.  Kulick did not disclose this opportunity to GRE.  Instead, he forwarded the e-mail to Beacon personnel the very next day and requested that they "download all docs and throw into a model[.]"

92.    On March 12, 2020, Kulick wrote to Diego and Emmely, copying Imery and Luis, "*attached please find a multi-property acquisition model to use as a template*."    (Emphasis added.)  Attached to Kulick's e-mail was GRE's underwriting model developed for a multi-property acquisition (including private financial information relating to three GRE properties known as Elan, Parmer and Carrington).  As with GRE's other models, GRE developed this model as an efficient and professional means to extrapolate and present immense data.  It

includes an excel workbook containing individual worksheets designed by GRE reflecting a summary and roll-up model for an entire portfolio as well as individual summaries, financial assumptions, rent roll and value add analyses, financing – amortization, 12-month income statements, and five-year proformas for each individual property in the portfolio.

93.    Also on March 12, 2020, Kulick was notified on his GRE e-mail of an acquisition opportunity known as Peppertree Apartments in North Charleston, South Carolina.  Kulick did not disclose this prospective opportunity to GRE.  Instead, he diverted the opportunity to Beacon personnel for further diligence.

94.    On March 17, 2020, Kulick wrote to Imery, Luis, Emmely and Diego that, after speaking with the broker, "it looks like we can take" the Domain and Gateway deals for $46 million, with $34.4 million in debt from Berkadia, and a resulting equity need just over $14 million. Kulick then directed Emmely and Diego to "put *these deals into the Gamma models and create a presentation*." (Emphasis added).

95.    The next day, Diego responded that he had "just finished the base skeleton for a multi-property model for our MF [multi-family] acquisitions, *based on Gamma's original model*."  (Emphasis added).  And, that he would "send an update tomorrow with Domain & Gateway's numbers *applied to this model*."  (Emphasis added.)

96.    On or about March 19, 2020, Kulick was notified on his GRE e-mail of an acquisition opportunity known as 743 @ Howell Mill in Atlanta, Georgia that the seller "wants to keep very quiet."  Kulick did not disclose this prospective opportunity to GRE.  Instead, he diverted it to Beacon, which, upon information and belief, submitted a letter of intent to the seller concerning its prospective acquisition of the property.

97.     Based on the foregoing, Kulick breached several provisions of Section 9.4 of the SLP LLC Agreement by (i) disclosing to Beacon Confidential Information other than in furtherance of the business of GRE and SLP business; (ii) utilizing Confidential Information for his own benefit and the benefit of Beacon; and (iii) failing to preserve and protect the confidentiality of any third-party information embedded within the Confidential Information to the same extent, and on the same basis, as the Confidential Information.

98.     SLP, JV Management, Gamma Funding and GRE did not approve or authorize Kulick to e-mail their Confidential Information to Beacon.

99.     As the result of Kulick's surreptitiously transmitting Confidential Information to Beacon, with the encouragement and assistance of Imery, Kulick and Beacon remain in unauthorized possession of that Confidential Information, which, upon information and belief, has resulted in Kulick and Beacon continuing to profit from his wrongful conduct.

100.     Upon information and belief, Beacon continues to use Confidential Information or documents derived therefrom in connection with its business operations, including by basing its underwriting models and investor presentations based on GRE's underwriting models and investor presentations.

101.     Upon information and belief, through Beacon, Kulick could, would, and has already used Confidential Information to advance the interests and/or gain a competitive advantage for Beacon to GRE and SLP's detriment.

102.     The documents uncovered through the investigation also establish that Kulick committed unethical conduct in the performance of his duties, including, without limitation, willful misconduct, gross negligence, theft, misappropriation of assets, and breaches of fiduciary duty, usurping corporate opportunities and other conduct of an unethical nature by, among other

things: (i) utilizing SLP and GRE's offices, e-mail accounts, employees, personnel, resources, and Confidential Information to advance his personal interests and Beacon's interests or otherwise pursue business opportunities for Beacon; (ii) failing to disclose, misrepresenting and actively concealing material information relating to his relationship with Beacon and adverse interests that affected his judgment during his employment, (iii) failing to disclose and instead usurping corporate opportunities that belonged to SLP and/or GRE; (iv) soliciting investors of GRE and SLP for the benefit of Beacon; and (v) misrepresenting GRE and SLP's interest, participation and/or involvement in business opportunities to foster third-party interest for his personal benefit and/or Beacon's benefit.

103.   As a result of this internal investigation, GRE, SLP and its Members properly assigned "Cause" to Kulick's "Involuntary Withdrawal."

**VI.   GRE Assigns Cause To Kulick's Termination and SLP's Members Cause SLP To Terminate and Redeem Kulick's Class C Membership Interests**

104.   On April 13, 2020, counsel for GRE and SLP notified Kulick that an ongoing investigation uncovered concrete and irrefutable evidence that he wrongfully used and disclosed their Confidential Information for the benefit of Beacon.  Amended Compl. Ex. 1.

105.   The April 13th letter provided formal notice, *inter alia*, that Kulick's Class C Membership interests are terminated and redeemed by SLP for the price of $0.01, effective March 31, 2020, due to conduct that constitutes Cause under the SLP LLC Agreement.  *See id.*

106.   On April 28, 2020, counsel for Kulick responded by characterizing the assertions in the April 13th letter as "baseless allegations of misconduct," and claiming that Kulick's Class C Membership Interests were automatically converted into Economic Interests on March 31, 2020 and that the termination of these interests "is void as a matter of law."  Amended Compl. Ex. 2.

**AS AND FOR A FIRST COUNTERCLAIM**
**(Declaratory Judgment Against Kulick)**

107.    Counterclaim-Plaintiffs repeat and reallege each of the allegations set forth above as if fully set forth herein.

108.    Kulick engaged in conduct that constitutes Cause under the SLP LLC Agreement, including the breach of the provisions of Section 9.4 of the SLP LLC Agreement and unethical conduct in the performance of his duties, including, without limitation, willful misconduct, gross negligence, theft, misappropriation of assets, and breaches of fiduciary duty, usurping corporate opportunities and other conduct of an unethical nature, which Kulick at all relevant times concealed from Counterclaim-Plaintiffs while employed by GRE and SLP.

109.    Counterclaim-Plaintiffs acted in accordance with the terms of the SLP LLC Agreement by assigning "Cause" to Kulick's termination and causing SLP to terminate and redeem Kulick's Class C Membership Interests in SLP for the price of $0.01.

110.    Kulick disputes that he engaged in conduct that constitutes Cause under the SLP LLC Agreement, and therefore, contends that his Class C Membership Interests were automatically converted into Economic Interests on March 31, 2020 and that the termination of these interests by SLP is void.

111.    On account of the foregoing, there now exists between Counterclaim-Plaintiffs and Kulick an actual, justiciable controversy with respect to which Counterclaim-Plaintiffs are entitled to have a declaration of their rights and further relief, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.

112.    Accordingly, Counterclaim-Plaintiffs are entitled to a judicial declaration that they acted in accordance with the terms of the SLP LLC Agreement by assigning "Cause" to Kulick's termination and causing SLP to terminate and redeem Kulick's Class C Membership

Interests in SLP for the price of $0.01, and therefore, that the termination of redemption of Kulick's Class C Membership Interests in SLP for the price of $0.01 is valid and enforceable.

**AS AND FOR A SECOND COUNTERCLAIM**
**(Breach of Fiduciary Duty/Duty of Loyalty/Disloyal Employee Doctrine)**

113.    Counterclaim-Plaintiffs repeat and realleges each of the allegations set forth above as if fully set forth herein.

114.    As a Class A Member and the Administrative Member of SLP, Kulick owed fiduciary duties of good faith, care and undivided and unselfish loyalty to SLP and its Members.

115.    As the "Chief Investment Officer, Multifamily" of GRE, Kulick owed fiduciary duties of good faith, care and undivided and unselfish loyalty to GRE.

116.    Kulick was obligated to promptly disclose all material information which may affect the transactions and dealings in which he was engaged on Counterclaim-Plaintiffs' behalf, and any adverse interests which would influence his judgment, and to refrain from placing himself in a position antagonistic to their interests.

117.    Kulick was obligated to not divert or exploit for his own benefit any opportunity or potential opportunity belonging to GRE or SLP.

118.    Kulick was obligated not to solicit GRE or SLP's investors to advance Beacon's interests.

119.    Kulick was obligated to not make use of GRE and SLP's offices, property, information and resources to compete with them or to act adversely to them for himself, Beacon or for any other party whose interests are adverse to their interests.

120.    Kulick was obligated to not communicate with third parties on behalf of GRE under false pretenses and/or while surreptitiously acting on behalf of Beacon.

- 27 -

121.    Kulick breached his fiduciary duties and/or duties of loyalty to GRE, SLP and SLP's Members by, among other things: (i) utilizing SLP and GRE's offices, e-mail accounts, employees, personnel, resources, and Confidential Information to advance his personal interests and Beacon's interests or otherwise pursue business opportunities for Beacon; (ii) failing to disclose, misrepresenting and actively concealing material information relating to his relationship with Beacon and adverse interests that affected his judgment during his employment, (iii) failing to disclose and instead usurping corporate opportunities that belonged to SLP and/or GRE; (iv) soliciting investors of GRE and SLP for the benefit of Beacon; and (vi) misrepresenting GRE and SLP's interest, participation and/or involvement in business opportunities to foster third-party interest for his personal benefit and/or Beacon's benefit.

122.    As a direct and proximate result of Kulick's breaches of fiduciary duty and duty of loyalty, Counterclaim-Plaintiffs have suffered and will continue to suffer damage to their business operations, business relationships and goodwill and, loss of the confidentiality of their Confidential Information.

123.    Counterclaim-Plaintiffs have been damaged in an amount to be proven at trial, including but not limited to an amount equal to all of the salary and remuneration paid to Kulick during the period of his disloyalty, and any profits he earned or will earn as the result of his breach.

### AS AND FOR A THIRD COUNTERCLAIM
### (Breach of Contract – SLP LLC Agreement)

124.    Gamma Funding, JV Management and SLP repeat and reallege each of the allegations set forth above as if fully set forth herein.

125.    Gamma Funding, JV Management and Kulick are parties to the SLP LLC Agreement.

126. At all relevant times, Gamma Funding and JV Management fulfilled all of their obligations to Kulick under the Agreement.

127. Under Section 9.4(a) of the SLP LLC Agreement, Kulick agreed that he "will not at any time, whether during his or her employment with the Company or thereafter, disclose to anyone (other than in furtherance of the business of the Company) any Confidential Information, or utilize such Confidential Information for his or her own benefit, or for the benefit of third parties," and promised "to preserve and protect the confidentiality of any third-party information similar to the Confidential Information to the same extent, and on the same basis, as the Company's Confidential Information."

128. Kulick breached Paragraph 9.4(a) of the Agreement during and after his employment with SLP by disclosing Confidential Information to Beacon and Beacon's principals and employees, utilizing such information for his own benefit and the benefit of Beacon, and failing to preserve and to protect third-party information embedded within the Confidential Information to the same extent, and on the same basis, as the Confidential Information.

129. Kulick used and, upon information and belief, continues to use Confidential Information in connection with his position as Manager of Beacon to SLP's and its Member's detriment.

130. SLP is entitled to the return of its Confidential Information and the destruction of all information, documents and work-product prepared by Beacon based upon or using its Confidential Information.

131. As a direct and proximate result of Kulick's breaches of the SLP LLC Agreement, SLP and its Members have suffered and will continue to suffer damage to their business

operations, business relationships and goodwill, and loss of the confidentiality of their Confidential Information.

132.    Counterclaim-Plaintiffs have been damaged in an amount to be proven at trial, including but not limited to an amount equal to all of the salary and remuneration paid to Kulick during the period of his disloyalty, and any profits he made or will make as the result of his breach.

**AS AND FOR A FOURTH COUNTERCLAIM**
**(Unfair Competition against Kulick)**

133.    GRE repeats and realleges each of the allegations set forth above as is fully set forth herein.

134.    By virtue of his employment with GRE, Kulick had access to Confidential Information relating to Gamma's business, business relationships and business opportunities, which is not known or available to their competitors, vendors or the public at large, and which has been developed through the labors and expenditures of GRE and its affiliates.

135.    GRE safeguards its Confidential Information and requires its employees, including Kulick, to acknowledge and agree to the terms of its Employment Manual which, among other things, explains that (i) the disclosure of confidential information violates its Code of Conduct, (iii) the Internet may not be used for personal gain and the solicitation of non-company business or any use of the Internet for personal gain is strictly prohibited, and (iii) e-mail communications may not violate this Internet usage policy, employees are to disclose information from e-mail system only to authorized persons, e-mail information is limited to those with a need to know the specific content thereof, the use of e-mail systems to make unauthorized transmissions of computer files may result in immediate termination and appropriate legal action, and Gamma reserves the right to monitor the e-mail system to ensure that these policies are being

followed and it is being used for proper business purposes.

136.    Kulick – who is Beacon's founder and co-manager – in violation of the Employment Manual and his duty of loyalty, good faith and common law obligations to his employer, has intentionally and in bad faith misappropriated and continues to improperly retain and misappropriate this Confidential Information for the benefit of his competing business and exploit for his own benefit and Beacon's benefit opportunities diverted to Beacon belonging to GRE.

137.    Beacon would not have had access to such information but for Kulick's wrongful and dishonest conduct while employed as GRE's Chief Investment Officer, Multifamily.

138.    In other words, Kulick misappropriated the fruits of GRE's labor, expenditure, relationships and joint ventures by obtaining access to GRE's and SLP's Confidential Information through fraud, deception, and the abuse of a fiduciary and confidential relationship.

139.    As a direct and proximate result of the Kulick's wrongful conduct, GRE has suffered and will continue to suffer damage to its business, business relationships and goodwill, and loss of the confidentiality of its Confidential Information.

140.    As the result of Kulick's unfair competition, GRE has been damaged in an amount to be proven at trial, including but not limited to any profits Kulick made or will make as the result of his use of its Confidential Information.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Counterclaim-Plaintiffs respectfully requests judgment against Kulick as follows:

A.    On the First Counterclaim, a judicial declaration that Counterclaim Plaintiffs acted in accordance with the terms of the SLP LLC Agreement by assigning "Cause" to Kulick's termination and causing SLP to terminate and redeem Kulick's Class C Membership Interests in SLP for the price of $0.01, and

- 31 -

therefore, that the termination of redemption of Kulick's Class C Membership Interests in SLP for the price of $0.01 is valid and enforceable;

B.      On the Second Counterclaim, an amount to be proven at trial, including but not limited to an amount equal to all of the salary and remuneration paid to Kulick during the period of his disloyalty, and any profits he earned or will earn as the result of his breach;

C.      On the Third Counterclaim, an amount to be proven at trial, including but not limited to an amount equal to all of the salary and remuneration paid to Kulick during the period of his disloyalty, and any profits he made or will earn as the result of his breach;

D.      On the Fourth Counterclaim, an amount to be proven at trial, including but not limited to an amount equal to all of the salary and remuneration paid to Kulick during the period of his disloyalty, and any profits he made or will earn as the result of his breach;

E.      The return of all Confidential Information belonging to SLP and GRE that Kulick provided to Beacon during or after his employment with GRE and SLP, as well as any templates, presentations, models, work product or other documents created or reviewed by Kulick for or on behalf of Beacon based on or using such documents and information;

F.      The imposition of a constructive trust in favor of GRE and SLP upon the profits acquired or to be acquired by Kulick through all usurped opportunities and/or breaches of loyalty and/or breaches of the Employment Manual and SLP LLC Agreement.

G.      Reasonable costs and reasonable attorneys' fees incurred in connection with this action

H.      Punitive damages to the extent permitted by law;

I.      Pre-and post-judgment interest to the extent permitted by law; and

J.      Such other and further relief as the Court deems just and proper.

## THIRD-PARTY COMPLAINT

### AS AND FOR A FIRST CLAIM
### (Aiding and Abetting Breach of Fiduciary Duty against Beacon and Imery)

141.    Third-Party Plaintiffs repeat and reallege each of the allegations set forth above as if fully set forth herein.

- 32 -

142.    As a Class A Member and the Administrative Member of SLP, Kulick owed fiduciary duties of good faith, care and undivided and unselfish loyalty to SLP and its Members.

143.    As the "Chief Investment Officer, Multifamily" of GRE, Kulick owed fiduciary duties of good faith, care and undivided and unselfish loyalty to GRE.

144.    Kulick was obligated to promptly disclose all material information which may affect the transactions and dealings in which he was engaged on their behalf, and any adverse interests which would influence his judgment, and to refrain from placing himself in a position antagonistic to their interests.

145.    Kulick was obligated to not divert or exploit for his own benefit any opportunity or potential opportunity belonging to GRE or SLP.

146.    Kulick was obligated not to solicit GRE or SLP's investors to advance Beacon's interests.

147.    Kulick was obligated to not make use of GRE and SLP's offices, property, information and resources to compete with them or to act adversely to them for himself, Beacon or for any other party whose interests are adverse to their interests.

148.    Kulick was obligated to not communicate with third-parties on behalf of GRE under false pretenses and/or while surreptitiously acting for Beacon.

149.    Kulick breached his fiduciary duties and/or duties of loyalty to GRE, SLP and SLP's Members by, among other things: (i) utilizing SLP and GRE's offices, e-mail accounts, and employees, personnel, resources and Confidential Information to advance his personal interests and Beacon's interests or otherwise pursue business opportunities for Beacon; (ii) failing to disclose, misrepresenting and actively concealing material information relating to his relationship with Beacon and adverse interests that affected his judgment during his

employment, (iii) failing to disclose and instead usurping corporate opportunities that belonged to SLP and/or GRE; (iv) soliciting investors of GRE and SLP for the benefit of Beacon; and (vi) misrepresenting GRE and SLP's interest, participation and/or involvement in business opportunities to foster third-party interest for his personal  benefit and/or Beacon's benefit.

150.    Beacon and Imery were aware that Kulick was breaching his fiduciary duties to SLP and GRE because Beacon and Imery were aware of Kulick's (i) utilizing SLP and GRE's offices, e-mail accounts, employees, personnel, resources and Confidential Information to expedite Beacon's formation, advance Beacon's interests or otherwise pursue business opportunities for Beacon; (ii) failing to disclose and actively conceal from GRE, SLP and its Members material information relating to Beacon's relationship with Kulick and adverse interests that affected Kulick's judgment, (iii) usurping and redirecting to Beacon corporate opportunities that belonged to SLP and/or GRE; (iv) soliciting investors of GRE and SLP for the benefit of Beacon; and (v) misrepresenting GRE and SLP's interest, participation and/or involvement in business opportunities to foster third-party interest for Beacon's benefit.

151.    Beacon and Imery substantially assisted and encouraged Kulick to breach his fiduciary duties to SLP and GRE by acting through Kulick, Imery, Luis, Emmely and/or Diego to (i) utilize SLP and GRE's offices, e-mail accounts, and employees, personnel and resources, and Confidential Information to expedite Beacon's formation, advance Beacon's interests or otherwise pursue business opportunities for Beacon; (ii) fail to disclose and actively conceal from GRE, SLP and its Members material information relating to Beacon's relationship with Kulick and adverse interests that affected Kulick's judgment, (iii) usurp and redirect to Beacon corporate opportunities that belonged to SLP and/or GRE; (iv) solicit investors of GRE and SLP

for the benefit of Beacon; and (v) misrepresent GRE and SLP's interest, participation and/or involvement in business opportunities to foster third-party interest for Beacon's benefit.

152.   As a direct and proximate result of Beacon and Imery's actively aiding and abetting Kulick's wrongful conduct, Third-Party Plaintiffs have suffered and will continue to suffer damage to their business, business relationships and goodwill, and loss of the confidentiality of their confidential information.

153.   As the result of Beacon and Imery's aiding and abetting the breach of fiduciary duty, Third-Party Plaintiffs have been damaged in an amount to be proven at trial, including but not limited to an amount equal to all of the salary and remuneration paid to Kulick during the period of his disloyalty, and any profits Beacon and Imery made and/or will make as the result of their tortious conduct.

### AS AND FOR A SECOND CLAIM
**(Tortious Interference With Contract – SLP LLC Agreement – against Beacon and Imery)**

154.   SLP, Gamma Funding and JV Management repeat and reallege each of the allegations set forth above as if fully set forth herein.

155.   Gamma Funding, JV Management and Kulick are parties to the SLP LLC Agreement.

156.   At all relevant times, Gamma Funding and JV Management fulfilled all of their obligations to Kulick under the Agreement.

157.   Under Section 9.4(a) of the SLP LLC Agreement,  Kulick agreed he "will not at any time, whether during his or her employment with the Company or thereafter, disclose to anyone (other than in furtherance of the business of the Company) any Confidential Information, or utilize such Confidential Information for his or her own benefit, or for the benefit of third parties," and "to preserve and protect the confidentiality of any third-party information similar to

the Confidential Information to the same extent, and on the same basis, as the Company's Confidential Information."

158. Beacon and Imery had knowledge of the terms of the SLP LLC Agreement, among other reasons, because Kulick accepted its terms, Kulick formed Beacon while he was a Class A, Class B, Class C and Administrative Member of SLP and is Beacon's Manager, and Kulick's knowledge is imputed to Beacon and its principals.

159. Kulick breached Paragraph 9.4(a) of the Agreement during and after his employment with SLP by disclosing Confidential Information to Beacon and Beacon's principals and employees, including Imery, utilizing such information for his own benefit and the benefit of Beacon, and failing to preserve and to protect third-party information embedded within the Confidential Information to the same extent, and on the same basis, as the Confidential Information.

160. Beacon and Imery intentionally procured a breach of the SLP LLC Agreement without justification, by encouraging, participating in and facilitating the foregoing breaches intending to harm Third-Party Plaintiffs as retribution for Kulick's perceived slights at the hands of SLP and GRE.

161. Beacon and Imery used and, upon information and belief, continues to use Confidential Information to SLP and its Member's financial detriment.

162. As a direct and proximate result of Beacon and Imery's misconduct, SLP and its Members have suffered and will continue to suffer damage to their business operations, business relationships and goodwill, and loss of the confidentiality of Confidential Information.

163. As the result of Beacon and Imery's tortious interference, Third-Party Plaintiffs have been damaged in an amount to be proven at trial, including but not limited to an amount

equal to all of the salary and remuneration paid to Kulick during the period of his disloyalty, and any profits Beacon and Imery made or will make as the result of their interference.

## AS AND FOR A THIRD CLAIM
### (Unfair Competition against Beacon and Imery)

164.    Third-Party Plaintiffs repeat and reallege each of the allegations set forth above as is fully set forth herein.

165.    By virtue of his employment, membership in, agreements with, and/or confidential relationship with GRE and SLP, Kulick had access to Confidential Information relating to SLP and Gamma's business and business relationships which is not known or available to their competitors, vendors or the public at large, and which has been developed through their labors and expenditures.

166.    GRE and SLP safeguard their Confidential Information, *inter alia*, by requiring (a) GRE and SLP's employees, including Kulick, to acknowledge and agree to the terms of their Employment Manual, and (b) SLP's members, including Kulick, to agree to the terms of the SLP LLC Agreement.

167.    Kulick – who is Beacon's founder and co-manager – in violation of his contractual and common law obligations, has intentionally and in bad faith misappropriated and continues to improperly retain and misappropriate this Confidential Information for the benefit of Kulick, Imery and Beacon's competing business.

168.    Imery and Beacon would not have had access to such information but for Kulick's wrongful and dishonest conduct while employed by GRE and SLP, and their facilitation of and substantial participation in Kulick's wrongful and dishonest conduct.

169.    In other words, Beacon, Imery and Kulick misappropriated the fruits of GRE's and SLP's labor and expenditure by obtaining access to Gamm Real Estate's and SLP's

confidential information through fraud, deception, and the abuse of a fiduciary and confidential relationship.

170. GRE and SLP are entitled to the return or their Confidential Information and the destruction of all information, documents and work-product prepared by Beacon based upon or using their Confidential Information.

171. As a direct and proximate result of the Kulick and Beacon's wrongful conduct, GRE and SLP have suffered and will continue to suffer damage to their business, business relationships and goodwill, and loss of the confidentiality of their Confidential Information.

172. As the result of Beacon's unfair competition, Third-Party Plaintiffs have been damaged in an amount to be proven at trial, including but not limited to any profits Beacon made or will make as the result of its use of Third-Party Plaintiffs' Confidential Information.

## AS AND FOR A FOURTH CLAIM
### (Unjust Enrichment against Beacon and Kulick)

173. Counterclaim Plaintiffs / Third-Party Plaintiffs repeat and reallege each of the allegations set forth above as if fully set forth herein.

174. As a result of the aforesaid wrongful actions, Kulick and Beacon have been and will continue to be, unjustly enriched at GRE, SLP and its members' expense.

175. Counterclaim Plaintiffs / Third-Party Plaintiffs are entitled to an accounting from Beacon and Kulick and to an award of damages equal to all monies unjustly received by Beacon and Kulick as a result of Kulick and Beacon's aforesaid wrongful conduct together with compensation for the use and loss of the confidentiality of their Confidential Information and resources.

## AS AND FOR A FIFTH CLAIM
### (Permanent Injunction against Beacon and Imery)

176.    Third-Party Plaintiffs repeat and reallege each of the allegations set forth above as is fully set forth herein.

177.    Kulick has breached his contractual obligations and fiduciary duties by, among other things, disclosing, using and misappropriating Confidential Information concerning GRE and SLP's business to form and advance the business interests of Beacon.

178.    GRE and SLP developed this Confidential Information through the investment of significant time and resources.

179.    It is likely that Beacon and Imery will continue to utilize GRE and SLP's Confidential Information in connection with its operations since they have failed to return and destroy all copies of this Confidential Information, and Kulick has claimed ignorance of, and disclaimed any responsibility for, his wrongful conduct.

180.    Beacon and Imery's conduct has caused, and, absent an injunction, will continue to cause, irreparable harm to GRE and SLP's business, particularly since Beacon is competing unfairly with GRE and SLP by using their Confidential Information for its own benefit.

181.    GRE and SLP have no adequate remedy at law.

182.    Accordingly, GRE and SLP are entitled to a permanent injunction (a) enjoining Beacon, its managers, employees, agents and any other persons or entities acting on its behalf, including Kulick and Imery, from using GRE and SLP's templates, presentations, models or other documents and information obtained from Kulick during or after his employment with GRE and SLP, as well as any templates, presentations, models, work product or other documents created by Beacon based on or using such documents and information; and (b) compelling Beacon and Imery to return GRE and SLP's templates, presentations, models or other documents

and information obtained from Kulick during or after his employment with GRE and SLP, and to destroy any copies thereof and any templates, presentations, models, work product or other documents created by Beacon and Imery based on or using such documents and information.

## PRAYER FOR RELIEF

**WHEREFORE**, Counterclaim Plaintiffs / Third-Party Plaintiffs respectfully request judgment against Beacon, Imery, and Kulick as follows:

A. On the First Claim, an amount to be proven at trial, including but not limited to an amount equal to all of the salary and remuneration paid to Kulick during the period of his disloyalty, and any profits Beacon and/or Imery made or will make as the result of their tortious conduct;

B. On the Second Claim, an amount to be proven at trial, including but not limited to an amount equal to all of the salary and remuneration paid to Kulick during the period of his disloyalty, and any profits Beacon and/or Imery made or will make as the result of their interference;

C. On the Third Claim, an amount to be proven at trial, including but not limited to any profits Beacon and Imery made or will make as the result of its use of Third-Party Plaintiffs' confidential information;

D. On the Fourth Claim, an accounting from Beacon and Kulick and an award of damages equal to all monies unjustly received by Beacon as a result of Kulick and Beacon's aforesaid wrongful conduct together with compensation for the use and loss of the confidentiality of their Confidential Information and resources.

E. On the Fifth Claim, a permanent injunction (a) enjoining Beacon, its managers, employees, agents and any other persons or entities acting on its behalf, including Kulick and Imery, from using GRE and SLP's templates, presentations, models or other documents and information obtained from Kulick during or after his employment with GRE and SLP, as well as any templates, presentations, models, work product or other documents created by Beacon based on or using such documents and information; and (b) compelling Beacon and Imery to return GRE and SLP's templates, presentations, models or other documents and information obtained from Kulick during or after his employment with GRE and SLP, and to destroy any copies thereof and any templates, presentations, models, work product or other documents created by Beacon based on or using such documents and information;

F. The imposition of a constructive trust in favor of GRE and SLP upon the profits acquired or to be acquired by Beacon and/or Imery through all wrongful conduct;

G.      Punitive damages to the extent permitted by law;

H.      Pre-and post-judgment interest to the extent permitted by law; and

I.      Such other and further relief as the Court deems just and proper.


## JURY DEMAND

Counterclaim Plaintiffs and Third-Party Plaintiffs demand a trial by jury as to all claims that may be tried to a jury.

Dated:   New York, New York
         December 14, 2020              HERRICK, FEINSTEIN LLP

                                        By:  *s/ Michael Berengarten*

                                        Carol M. Goodman
                                        Michael Berengarten
                                        Scott C. Ross
                                        2 Park Avenue
                                        New York, New York 10016
                                        Telephone:    (212) 592-1400
                                        Facsimile:    (212) 592-1500
                                        *Attorneys for Defendants/Counterclaim*
                                        *Plaintiffs/Third-Party Plaintiffs*

- 41 -

HF 13311522v.12