UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:_____               │
│ DATE FILED: _3/10/2021___            │
└─────────────────────────────────────┘

RICHARD KULICK,

                        Plaintiff,

                -against-

GAMMA REAL ESTATE LLC, GRE JV SLP
LLC, GAMMA FUNDING SPECIAL LIMITED
PARTNER LLC, JV MANAGEMENT LLC, N.
RICHARD KALIKOW, JONATHAN KALIKOW,
JOHN ILLUZZI, and VAN NGUYEN,

                        Defendants.

1:20-cv-03582-MKV

OPINION AND ORDER GRANTING
IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO
DISMISS

MARY KAY VYSKOCIL, United States District Judge:

      Plaintiff Richard Kulick brings this action for damages in relation to Defendants' alleged

scheme to freeze him out of a real estate investment business they jointly operated for several

years.  Central to these claims, Plaintiff seeks to recover fees Defendants wrongfully withheld or

diverted from him following Plaintiff's resignation from the joint venture.  Specifically, Plaintiff

claims that he retained an economic interest in income earned by a limited liability company

which he had formed with certain Defendants.  *See* Amended Complaint, ECF No. 20 ("AC") ¶¶

1-4, 28-32.  After Plaintiff negotiated his resignation from the business, he claims that

Defendants conspired to falsify claims that he was terminated "for cause," terminating his

interests in certain investment vehicles.  AC ¶¶ 1-4.  Plaintiff also claims that since his

resignation, Defendants have wrongfully withheld payments due to him as a member of other

investment vehicle LLCs.  AC ¶¶ 133-150.

      Defendants moved to dismiss certain claims asserted in Plaintiff's Amended Complaint

on the ground that they were duplicative of Plaintiff's contract claims or otherwise were barred

by Delaware law or the terms of the Parties' contracts.  For the reasons set forth below,

Defendants' Motion is GRANTED IN PART and DENIED IN PART.

## FACTUAL BACKGROUND

The facts as stated herein are drawn from Plaintiff's Amended Complaint, ECF No. 20

("AC"), and are assumed to be true for the purpose of the Motion.  *See Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009).

### A.    *Formation of the Parties' Investment Vehicle - SLP*

Plaintiff and the Individual Defendants in this action—Richard and Jonathan Kalikow,

John Illuzzi, and Van Nguyen—agreed in 2015 to begin a real estate investment venture directed

at multifamily properties in the Southeastern United States.  *See* AC ¶ 27.  Richard and Jonathan

Kalikow own Defendant Gamma Real Estate ("GRE") and control GRE's real estate

development and financing businesses.  AC ¶¶ 22-23.  As part of their joint venture, Kulick and

the Individual Defendants formed Defendant GRE JV SLP LLC ("SLP") and executed a Limited

Liability Company Agreement (the "SLP LLC Agreement") to govern the entity.  AC ¶ 28; *see*

SLP LLC Agreement, ECF No. 23-2.  The SLP LLC Agreement is incorporated into the

Amended Complaint and is governed by Delaware law.  *See* AC ¶ 1; SLP LLC Agreement §

12.3.

As set forth in the SLP LLC Agreement, the members of SLP were Plaintiff and

Defendants Gamma Funding Special Limited Partner LLC ("GFLP") and JV Management LLC

("JVM").  AC ¶ 28.  Plaintiff alleges that GFLP is controlled by the Kalikow Defendants while

JVM is controlled by Defendants Illuzzi and Nguyen.  AC ¶ 28.  When SLP was created, SLP's

members held portions of three interests in the company: (i) a Class A or Management Interest;

(ii) a Class B or Fee Income Economic Interest; and (iii) Class C or Carried Interest Income

Economic Interest.  AC ¶ 30.  Holders of Class A interests can "participate in the management of the business and affairs of SLP," while Class B and C interest holders have a "right, expressed as a percentage, to share in" Fee Income and Carried Interest Income respectively.  AC ¶ 30, SLP LLC Agreement Art. II.  SLP's Fee Income is made up of proceeds from a one-time acquisition fee for each investment (typically one percent of the purchase price) and a one percent asset management fee (typically, one percent of the equity) paid monthly.  AC ¶ 42.  The Carried Interest Income comprises a profit share, typically 20 percent of profit after a set return to investors.  AC ¶ 42.  Carried interest income, however, is not earned until an investment property is sold or substantially refinanced.  AC ¶ 42.

GFLP and JVM each held 43.75 percent of the Class A, B and C interests, and Kulick held the remaining 12.75 percent of each interest.  AC ¶ 31.  Kulick was appointed the "Administrative Member" of SLP, tasked with day-to-day management of SLP and with "implement[ing] the decisions of the Class A Members."  AC ¶ 32; SLP LLC Agreement § 5.10(a).  The SLP LLC Agreement provides that Class A Members "may bind [SLP] in the ordinary course to the extent that such action is approved by the Majority in Interest of the Class A Members."  SLP LLC Agreement § 5.1(a).  Kulick's role as Administrative Member of SLP terminated if he no longer held any Class A interest in SLP.  SLP LLC Agreement § 5.10(c).

The SLP LLC Agreement provides for voluntary and involuntary withdrawal from SLP.  Voluntary withdrawal of a member from SLP is defined as

> the voluntary withdrawal from [SLP] by such Member.  For the purposes of clarification, in the case of [Kulick], his resignation as an employee of [GFLP] or its Affiliate shall constitute an Involuntary Withdrawal hereunder unless [Kulick] also affirmatively voluntarily withdraws as a Member of the Company.

AC ¶ 34; SLP LLC Agreement Art. II [definition of Voluntary Withdrawal].  The SLP LLC Agreement also provides for "Involuntary Withdrawal" upon Kulick's "resignation as an

employee of [GFLP] or its Affiliate or the termination . . . of his employment for any reason or

no reason." SLP LLC Agreement Art. II [definition of "Involuntary Withdrawal"]. Upon a

withdrawal from SLP, whether voluntary or involuntary, Class A and Class B interests held by

Kulick automatically terminate. SLP LLC Agreement § 8.1(a)-(b). Upon voluntary withdrawal,

Kulick's Class C interests also terminate. AC ¶ 38; LLC Agreement § 8.1(c). However, upon an

Involuntary Withdrawal, Kulick's Class C interests automatically convert into an "Economic

Interest" which other members may purchase for "Fair Market Value" unless Kulick is

terminated from his employment "for Cause." AC ¶ 38; SLP LLC Agreement § 8.1(c). In that

circumstance, "[Kulick's] Class C Membership Interest shall be terminated and redeemed by

[SLP] for the price of $0.01." AC ¶ 38; SLP LLC Agreement § 8.1(c). The SLP LLC

Agreement provides that "Cause" as it related to Kulick's employment includes "any of the

following occurrences:

> (i) [Kulick's] conviction by a court of competent jurisdiction of any offense
> punishable by imprisonment in a state or federal penitentiary or any offense, civil
> or criminal, involving moral turpitude or immoral conduct; (ii) [Kulick's]
> unethical conduct in the performance of his duties, including, without limitation,
> willful misconduct, gross negligence, fraud, theft, embezzlement,
> misappropriation of assets, or other conduct of a criminal or unethical nature; (iii)
> [Kulick's] use of illegal drugs, intoxication while performing [SLP] or [GFLP]
> business or abusive use of prescription drugs; (iv) [Kulick's] breach of this
> Agreement or negligence in the performance of his duties hereunder or as an
> employee of [SLP] or [GFLP], or if [Kulick] is determined to be in violation of
> [SLP's] or [GFLP's] employment or operations manuals or otherwise not acting
> in the best interests of [SLP] or [GFLP], which breach, negligence or violation is
> not cured within a period of thirty (30) days after [Kulick's] receipt of written
> notice specifying such breach, negligence or violation and demanding a cure
> thereof; or (v) [Kulick's] breach of any of the provisions of Section 9.4 hereof.

SLP LLC Agreement Art. II [definition of Cause]. Among other provisions, Section 9.4

prohibits disclosure of "Confidential Information" to anyone (other than for company business)

or use of Confidential Information for personal benefit. SLP LLC Agreement § 9.4(a).

In addition to entitlement to payments based on his interest in SLP, as outlined above, Kulick also held, along with certain of the other Individual Defendants, direct interests in certain entities (the "Manager LLCs") formed to manage certain of the investment properties (the "Partnership Properties") in partnership with investors in the deal.  AC ¶¶ 5, 56-57.  All Parties agree that the LLC Agreements governing the Manager LLCs for the Partnership Properties (the "Manager LLC Agreements") also are incorporated into the Amended Complaint.  AC ¶¶ 50, 56; *see also* Declaration of Jonathan Kalikow, ECF No. 23, Exs. 3-11 (comprising all of the relevant Manager LLC Agreements).  In certain of the Parties' investments, income flows not only through SLP but also through other Manager LLCs to Kulick and others.  Specifically, Kulick held direct economic interests in Manager LLCs for thirteen investment properties, at least two of which were sold prior to this litigation.  AC ¶¶ 51, 56.  Kulick is a member of each of the Partnership Properties Manager LLCs.  AC ¶ 57

One such Manager LLC resulted from the GRE Charlotte GP LLC Agreement.  AC ¶¶ 46-55.  Kulick and Defendants Illuzzi and Nguyen each hold a 33.33 percent Management Interest in the GRE Charlotte GP LLC, which was responsible for managing two investment properties in Charlotte, North Carolina.  AC ¶¶ 51-52.  Those properties were sold in March 2020, resulting in profits that should have been distributed to the members of GRE Charlotte GP LLC.  AC ¶ 54.  However, Kulick never received any funds from the sale despite his membership interest.  AC ¶ 55.

**B.      Events Giving Rise to the Parties' Dispute**

In 2019, following several years of management of the Parties' investments, Kulick began to perceive that the Kalikow Defendants were interfering with his work.  AC ¶¶ 58-63.  Among other complaints, Kulick believed that the Kalikows were seeking to claim credit for

Kulick's success in real estate investing, while other portions of the Kalikows' GRE investments were failing.  AC ¶ 61.  Eventually, Kulick determined that the efforts were directed at freezing him out of the Parties' business, in an effort to benefit the Kalikow Defendants at his expense. AC ¶ 62.  As a result of the interference, Kulick began to explore withdrawing from the Parties' venture without losing his entire economic interest.  AC ¶ 64.  In February 2020, Kulick suggested to the other Defendants that he could make an Involuntary Withdrawal from SLP and suggested that his resulting Economic Interest (as a result of his outstanding Class C interests) could be purchased by the other members of SLP.  AC ¶ 64.

The Parties negotiated Kulick's Involuntary Withdrawal in a February 27, 2020, meeting. AC ¶ 66.  At that time, the Parties agreed that Kulick would resign as Administrative Member of SLP effective March 31, 2020 and that Kulick's Class A and B Interests (but not his Class C Interests) would terminate upon his resignation.  AC ¶¶ 67-68.  Following the meeting, on March 20, 2020, Defendant Jonathan Kalikow confirmed to Kulick: "[A]s discussed, absent a termination 'for cause', and unless the other members elect to buy out your Class C Membership Interests, you [Kulick] will retain your 12.5% Class C Membership Interests . . . ."  AC ¶ 70.   In the same email, Kalikow also states that Kulick's interest in any Management LLC would survive his resignation and withdrawal.  AC ¶ 71.

Kulick continued to manage the Parties' investment portfolio after the Parties' agreement and until his negotiated withdrawal date of March 31, 2020.  AC ¶ 76.  During this period, Kulick also requested that GRE delay until April 15, 2020, a payment of approximately $150,000 due to him in mid-March, as a result of the sale of the two Partnership Properties in North Carolina addressed above.  AC ¶ 75.

Kulick's withdrawal date of March 31, 2020 apparently passed without incident.  On April 6, 2020, Kulick joined Beacon Real Estate Group, LLC.  One week later, on April 13, 2020, Kulick received a letter (the "Termination Letter") from counsel for GRE and SLP explaining that they possessed "evidence that, during the term of [Kulick's] employment, [Kulick] engaged in conduct that constitutes "Cause" as defined under the [SLP LLC Agreement]."  AC ¶ 80.  The Termination Letter specified that Kulick "wrongfully used, disclosed, and took the Companies' highly confidential, proprietary and/or trade secret information."  AC ¶ 80, Ex. 1.  The Termination Letter also purported to terminate and redeem Kulick's Class C Interests in SLP for $0.01, pursuant to the SLP LLC Agreement.  AC ¶ 80, Ex. 1.  Kulick never received the $150,000 payment which was delayed from March and has not received any further payments as a result of his Class C Interest in SLP or his interest in the Management LLCs.  AC ¶ 81.

## C.     *Procedural History*

Kulick filed his initial complaint in this action on May 7, 2020.  *See* Complaint, ECF No. 1.  After they waived service, *see* Waiver of Service, ECF No. 7, Defendants moved to dismiss the original complaint.  *See* Motion to Dismiss, ECF No. 16.  In response to the motion, Plaintiff filed his Amended Complaint.

The Amended Complaint asserts eight causes of action.  *First*, Kulick claims that SLP, GFLP, and JVM breached the SLP LLC Agreement by retroactively and wrongly terminating his Class C Interests.  AC ¶¶ 99-107.  *Second*, Kulick claims that GFLP and JVM, the other members of SLP, breached their fiduciary duties owed to him by engaging in self-interested transactions and by manipulating SLP to retain control and push Kulick out of the company.  AC ¶¶ 108-116.  *Third*, Kulick asserts an unjust enrichment claim against Defendant GRE, alleging

that GRE has received funds derived from the Partnership Properties that should have been distributed to him. AC ¶¶ 117-125. *Fourth*, Kulick seeks an equitable accounting of GRE's and SLP's records, claiming that the companies co-mingled funds in order to conceal funds owed to Kulick. AC ¶¶ 126-132. *Fifth,* Kulick asserts the Defendants Illuzzi and Nguyen breached the GRE Charlotte GP LLC Agreement by failing to remit payments from the sale of properties to him. *Sixth*, Kulick asserts a breach of fiduciary duty claim against all of the Individual Defendants for failing to distribute funds due to Kulick under the LLC Agreements for each of the Partnership Properties Manager LLCs and instead taking actions to enrich themselves. AC ¶¶ 141-150. *Seventh*, Kulick claims that all Defendants aided and abetted the breaches of fiduciary duty outlined in other causes of action. AC ¶¶ 151-155. *Eighth*, and finally, Kulick seeks a declaration that he is entitled to payments from the Partnership Properties and confirming that Kulick remains a member with management authority over the Manager LLCs for the Partnership Properties. AC ¶¶ 156-165.

Defendants filed a Motion to Dismiss the Amended Complaint. *See* Notice of Motion to Dismiss, ECF No. 21. By their Motion, Defendants seek to dismiss the second, third, fourth, sixth, seventh, and eighth causes of action. *See* Notice of Motion to Dismiss at 1. If successful, Defendants' Motion would leave only Kulick's claims for breach of the SLP LLC Agreement and breach of the GRE Charlotte GP LLC Agreement. With their Motion, Defendants filed a Memorandum of Law [ECF No. 22] ("Def. Br.") and a Declaration of Jonathan Kalikow in Support of the Motion [ECF No. 23] ("Kalikow Decl.").[1] Plaintiff opposed the Motion with a

---

[1] Defendants initially submitted the Kalikow Declaration with certain exhibits under seal. *See* ECF No. 23. The Court subsequently denied Defendants' motion to keep the exhibits under seal and ordered that copies of the exhibits be filed publicly on the ECF docket, with limited redactions related to identification of any third parties not involved in this case. *See* Order Denying Motion to Seal, ECF No. 29. Defendants submitted publicly-available copies of all exhibits previously filed under seal in a separate declaration. *See* ECF No. 31.

Memorandum of Law [ECF No. 32] ("Opp.") and Defendants filed a Reply Memorandum in Further Support [ECF No. 33] ("Def. Reply").

While this Motion was pending, the Parties have engaged in discovery.  During discovery, Defendants filed a Third Party Complaint against Beacon Real Estate Group LLC and its Managing Partner, Carlos Imery, as well as several counterclaims against Kulick.  *See* Counterclaims and Third Party Complaint, ECF No. 40, 42.[2]  Both the Third Party Defendants and Kulick answered the claims against them.  *See* Answer to Third Party Complaint, ECF No. 49; Answer to Counterclaims, ECF No. 50.

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim on which relief may be granted, under Rule 12(b)(6), a plaintiff only needs to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court must "'accept[] all of the complaint's factual allegations as true and draw[] all reasonable inferences in the plaintiff's favor.'"  *Siegel v. HSBC North America Holdings, Inc.*, 933 F.3d 217, 222 (2d Cir. 2019) (quoting *Giunta v. Dingman*, 893 F.3d 73, 78-79 (2d Cir. 2018)).  However, the Court is "'not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions.'"  *Id.* (quoting *In re Facebook Initial Public Offering Derivative Litig.*, 797 F.3d 148, 159 (2d Cir. 2015)).

When considering a motion to dismiss, the Court is limited to a "narrow universe of materials."  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).  "Generally, [courts] do not look beyond 'facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be

---

[2] While there are two documents on the Court's ECF docket, respectively labeled "Third Party Complaint" and "Counterclaim," the documents appear to be identical and both contain all claims asserted by Defendants.

taken.'"  *Id.* (quoting *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 51 n. 2 (2d Cir.

2016)) (alterations in original).  In some cases, however, "a document not expressly incorporated

by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair

object of consideration on a motion to dismiss."  *Id.*  Documents are "integral" to a complaint

"where the complaint relies heavily upon its terms and effect."  *Chambers v. Time Warner, Inc.*,

282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted).

 Defendants assert that Delaware law governs their dispute.  *See* Def. Br. at 13 n. 8.

Plaintiff, while noting that New York law may be appropriate, does not argue otherwise and,

indeed, cites Delaware precedent.  *See* Opp. at 8.  Normally, where there is a question regarding

choice of law, the Court is obligated to conduct its own choice of law analysis regardless of the

Parties agreement on the issue.  *See Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97

(1941).  Because the Court has jurisdiction over this case by reason of the Parties' diversity, the

Court applies New York's choice-of-law rules.  *See Fieger v. Pitney Bowes Credit Corp.*, 251

F.3d 386, 393 (2d Cir. 2001) ("A federal trial court sitting in diversity jurisdiction must apply the

law of the forum state to determine the choice-of-law.").  However, "[u]nder New York choice

of law rules, the first inquiry in a case presenting a potential choice of law issue is whether there

is an actual conflict of laws on the issues presented."  *Fed. Ins. Co. v. Am. Home Assurance Co.*,

639 F.3d 557, 566 (2d Cir. 2011) (citing *Fieger*, 251 F.3d at 393).  "If not, no choice of law

analysis is necessary."  *Id.*

 In this case, the Parties suggest New York or Delaware law applies to the claims here.

*See* Def. Br. at 13 n. 8; Opp. at 8 n. 4.  Plaintiff submits that "New York and Delaware courts

adopt similar approaches to each of the claims asserted in the Amended Complaint."  Opp. at 8 n.

4.  Defendants contest this assertion only with regard to Plaintiff's fiduciary duty claims.  *See*

Def. Reply at 3.  Indeed, with regard to Plaintiff's other claims, Defendants argue under both

New York and Delaware law.  *See* Def. Reply at 8-10.  After review of relevant precedent, the

Court agrees that, for the purposes of this Motion and at this stage, New York and Delaware law

are not in conflict.  Nonetheless, throughout this Opinion the Court cites to Delaware law which

is what Defendants argue, without opposition, applies to the claims that are the subject of this

motion.

## DISCUSSION

Defendants' Motion to Dismiss seeks dismissal of six of Plaintiff's eight causes of action.

Specifically, Defendants seek dismissal of all claims other than Plaintiff's two breach of contract

claims.  However, before proceeding to Defendants' arguments on the merits, the Parties also

dispute whether other contracts not explicitly referenced in the Amended Complaint may

nevertheless be considered on this Motion.  Thus, the Court first considers whether those

agreements are properly before the Court.  Concluding that they are not, the Court then proceeds

to Defendants' arguments related to each of Plaintiff's claims.

**A.**     ***The Court Will Not Consider Documents Not Incorporated Into the Amended
Complaint***

To support several of their arguments against Plaintiff's claims, Defendants urge the

Court to consider nine contracts, the so-called "Project Entity Agreements," that are not

incorporated into the Amended Complaint.  Def. Br. at 9-11, Def. Reply at 1-2.  Plaintiff opposes

consideration of these documents, as they were not referenced in or incorporated into the

Amended Complaint.  Opp. at 4-7.  The Court agrees with Plaintiff and will not consider the

Project Entity Agreements on this Motion.

Defendants first suggest that the Project Entity Agreements are fully incorporated into the

Amended Complaint.  *See* Def. Reply at 1-2.  This argument flatly is incorrect.  As an initial

matter, the Project Entity Agreements are not attached to the Amended Complaint and were only submitted by Defendants in connection with their motion to dismiss.  Defendants point to several fleeting references in the Amended Complaint to "relevant LLC Agreements" related to the Partnership Properties.  Def. Reply at 2.  However, these passing mentions do not rise to the level of a "a clear, definite and substantial reference to the documents" necessary to make a document incorporated by reference in a complaint.  *Helprin v. Harcourt, Inc.*, 277 F.Supp.2d 327, 330–31 (S.D.N.Y. 2003).  Indeed, even if Plaintiff had made "limited quotation" of the documents without attaching them, this "[would] not constitute incorporation by reference." *Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir. 1985).  As a result, since Defendant cannot point to anything more than fleeting references to the Project Entity Agreements, including none by name, the documents are not incorporated by reference.

On a motion to dismiss, a court also has discretion to consider documents not expressly incorporated into a complaint where the documents are otherwise "integral" to it.  *Goel*, 820 F.3d at 559.  In most cases where courts consider "integral" documents, the material is "a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls." *Id.*  However, the Court's discretion is just that—discretion—and the Court is not required to consider documents that are not fully incorporated into a plaintiff's complaint.  *See, e.g.*, *In re Bank of New York Mellon Corp. Forex Transactions Litig.*, 991 F. Supp. 2d 479, 488 (S.D.N.Y. 2014) (refusing to consider the full text of contracts on which a plaintiff's claims were based but which were not incorporated into the complaint).

Moreover, numerous cases support the proposition that in order to be "integral," a document must be relied on *by a plaintiff* and not only by defendants.  *See, e.g.*, *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 113 (2d Cir. 2010) (noting that a district court erred in

considered documents not incorporated into the complaint because they were not "relied upon in any way in [Plaintiff's] claim for breach of contract); *Chambers*, 282 F.3d at 153 ("[W]e reiterate here that a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." (emphasis in original)); *Cortec Indus., Inc. v. Sum Holdings L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (noting that documents properly may be considered on a motion to dismiss where "plaintiffs had [the documents] either in its possession or had knowledge of and upon which they *relied in bringing suit*" (emphasis added)); *see also Goel*, 820 F.3d at 559 (noting that documents integral to a complaint are those on which "*plaintiff's complaint stands or falls*, but which for some reason . . . was not attached to the complaint." (emphasis added)). Finally, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Id.*

Not only are they not incorporated by reference, but the Project Entity Agreements also are not integral to the complaint. As Plaintiff states in his Opposition to the Motion, Kulick does not rely on any of the Project Entity Agreements and is not a party to them. *See* Opp. at 5. *Defendants* seek to use the Project Entity Agreements to contest Plaintiff's claims that he is entitled to payments from his interests in the Partnership Properties under the LLC Agreements that Plaintiff does incorporate. *See* Opp. at 5; Def. Reply at 2. Far from actively relying on the Project Entity Agreements, Plaintiff expressly disclaims reliance on the contracts. *See* Opp. at 6. To be sure, courts have found that documents that were not relied upon by a plaintiff were nevertheless integral where the documents explicitly modified a document that was incorporated

into the complaint.  *See, e.g.*, *Jurupa Valley Spectrum, LLC v. Nat'l Indem. Co.*, No. 06 Civ. 4023 (DLC), 2007 WL 1862162, at \*5–\*6 (S.D.N.Y. June 29, 2007) (concluding that a document which explicitly amends a contract that is already incorporated into a complaint (*i.e.* stating that it does so) is integral to a complaint).  However, Defendants point to no facts here that the Project Entity Agreements explicitly amend the agreement on which Plaintiff does rely. Instead, Defendants essentially argue that by function of the procedures in the Project Entity Agreements, any funds received from the Partnership Properties were not wrongly diverted.  *See* Def. Reply at 2.  This does not constitute the kind of modification that would allow the Court to consider the Project Entity Agreements at this stage absent Plaintiff's reliance on them.  As a result, because Kulick does not rely on the Project Entity Agreements or use them in any way in his Amended Complaint, the documents cannot be considered as "integral" to the Amended Complaint.

Even if the documents were integral though, the Court still could not consider them because it is not clear that no dispute exists regarding the authenticity [or] accuracy of the document[s]" and that there are "no material disputed issues of fact regarding the relevance of the document[s]."  *Faulkner*, 463 F.3d at 134 (2d Cir. 2006).  Indeed, Plaintiff states that "*None* of these 'Project Entity Agreements' addresses the claims Kulick asserts in the Amended Complaint."  Opp. at 5 (emphasis in original).  Plaintiff thereby disputes the relevance of the agreements and, absent further explanation by the Parties, the Court cannot determine how and whether the Project Entity Agreements are actually relevant to the claims.  In this case, the Court will exercise discretion not to consider the Project Entity Agreements in connection with Defendants' motion to dismiss the Amended Complaint even if it could fairly be argued that they

are "integral" to it.  Defendants' defenses based on those agreements may be raised later in the case upon a full record.

**B.      *Plaintiff's Fiduciary Duty Claims State a Claim for Relief***

Plaintiff's Amended Complaint includes three claims asserting various breaches of fiduciary duties.  First, in Cause of Action Two, Plaintiff alleges that the other members of SLP violated duties owed to him in connection with their management of SLP.  Second, in Cause of Action Six, Plaintiff alleges that the Individual Defendants violated fiduciary duties owed to him *vis-à-vis* the management of the Partnership Properties.  Third, in Cause of Action Seven, Plaintiff argues that all other Defendants aided and abetted the violations of fiduciary duties in the previous causes of action.  While the Court agrees with Defendants that certain conduct alleged in the Amended Complaint is not properly subject to a fiduciary duty claim, Plaintiff nonetheless has stated a valid claim in each of the challenged causes of action.

**1)      *Cause of Action Two – Plaintiff's Fiduciary Duty Claim Related to SLP***

Defendants seek dismissal of Kulick's second cause of action, a fiduciary duty claim against GFLP and JVM on the basis that any alleged wrongdoing relates to rights and obligations in the SLP LLC Agreement.  *See* Def. Br. at 13-16.  As a result, Defendants submit that the claim should be dismissed as duplicative of Plaintiff's first cause of action for breach of the SLP LLC Agreement.  Plaintiff opposes the motion on the ground that the misconduct described in Kulick's claim for breach of a fiduciary duty involves more wrongdoing, a longer period of time, and is broader in scope than the contract claim, making it legally distinguishable.  *See* Opp. at 8-11.

Under Delaware law, "a plaintiff may not 'bootstrap' a breach of fiduciary duty claim into a breach of contract claim merely by restating the breach of contract claim as a breach of fiduciary duty."  *Grunstein v. Silva*, C.A. No. 3932-VCN, 2009 WL 4698541, at *6 (Del. Ch.

Dec. 8, 2009) (internal citations omitted).  "Courts will dismiss the breach of fiduciary [duty] claim where the two claims overlap completely and arise from the same underlying conduct or nucleus of operative facts."  *Id.*  However, the Delaware Supreme Court recently has clarified that this bootstrapping case law *only* requires dismissal where a fiduciary duty claim *wholly overlaps* with a concurrent breach of contract claim."  *Bäcker v. Palisades Growth Capital II, L.P.*, __ A.3d __, 2021 WL 140921, at *21 (Del. Jan. 15, 2021) (emphasis added).

As an exemplar case, the Delaware Supreme Court cited *Schuss v. Penfield Partners, L.P.*, which is relied on by Plaintiff here.  C.A. No. 3132-VCP, 2008 WL 2433842 (Del. Ch. June 13, 2008) (cited at *Bäcker*, 2021 WL 140921, at *21); *see also* Opp. at 8.  In *Schuss*, Vice Chancellor Parsons held that the plaintiff's fiduciary duty claim was not duplicative of a breach of contract because it alleged misconduct unrelated to the monetary distributions subject to the contract claim. 2008 WL 2433842, at *10.  Specifically, whereas the plaintiff's contract claim was concerned with underpayment of liquidated partnership shares, the fiduciary duty claim alleged intentional wrongdoing and ascribed a motive apart from simply effecting one underpayment to the defendants.  *Id.*

The facts in *Schuss* are analogous to those in Plaintiff's Amended Complaint.  In his claim for breach of the SLP LLC Agreement, Kulick seeks the funds he alleges he is due as a holder of an "Economic Interest" in SLP.  AC ¶¶ 103-107.  In other words, he claims that Defendants underpaid him for his outstanding shares in the company.  Meanwhile, Kulick's fiduciary duty claim concerns different conduct (purported self-dealing transactions and interference with Kulick's role as Administrative Member of SLP), different harm (breach of the duty of loyalty rather than only underpayment), and a different time period (the harms occurred largely before Kulick departed SLP, whereas the contract breach occurred contemporaneous with

16

and after his departure).  *See* AC ¶¶ 112-115.[3]  Like in *Schuss* then, Kulick has stated a claim for

breach of fiduciary duties separate and distinct from his contract claim against the same Parties.

      This case also is analogous to *Trahan v. Lazar*, a case relied on by Plaintiff and which

Defendants do not attempt to distinguish.  457 F. Supp. 3d 323 (S.D.N.Y. 2020) (cited at Opp. at

10).  In that case, Judge Woods of this Court held that, under Delaware law, a plaintiff's

fiduciary duty claim was not duplicative of a breach of contract claim where he alleged "a

sweeping plot in which Defendants schemed to oust [Plaintiff], cut him out of partnership

activities, and steal his clients."  *Id.* at 349.  Judge Woods concluded that "[t]he broad alleged

breaches of fiduciary duties do not relate solely to obligations arising from the provisions of the

Agreements."  *Id.*  Similarly, in this case, Kulick alleges that Defendants took extensive efforts

to interfere with his duties as Administrative Member of SLP and with the day-to-day

management of the investment properties, ultimately resulting in his withdrawal from SLP.  AC

¶¶ 58-64, 112-114. The Court finds the reasoning of *Trahan* persuasive and applicable to

Plaintiff's claims in this case.

      Because Plaintiff's fiduciary duty claim against GFLP and JVM is not duplicative of his

breach of contract claim against them, Defendant's Motion to Dismiss the claim is denied.

     2)      ***Cause of Action Six – Plaintiff's Fiduciary Duty Claim***
               ***Related to the Partnership Properties***

      Defendants also seek dismissal of Plaintiff's fiduciary duty claim related to the

Partnership Properties (Cause of Action Six) arguing that they are duplicative of his claim for

breach of the LLC Agreements related to those investments or are otherwise disputes governed

---

[3] Defendants' attempts to distinguish *Schuss* do not change the analysis here.  *See* Def. Reply at 3.  Indeed, Defendants' key distinction, that the fiduciary duty claim in *Schuss* "was broader in scope" and "pled distinct harms that 'fell outside the scope of [the parties] contractual relationship,'" is not a distinction at all.  Def. Reply at 3 (quoting *Grunstein*, 2009 WL 4698541, at *6-7).  As noted herein, Kulick's fiduciary duty claim related to his being pushed out of SLP depends on different alleged behavior of Defendants and alleges a different harm, breach of a duty of loyalty during his employment rather than underpayment afterward.

by a contract that cannot be cognizable as a fiduciary duty claim.  Def. Br. at 19-22.  Kulick's

Sixth Cause of Action fiduciary duty claim seeks damages against all of the Individual

Defendants, each of whom are members of certain, but not all, of the Manager LLCs for the

Partnership Properties.  The claim alleges that the Individual Defendants 1) funneled funds to

other GRE-related entities for the purposes of self-dealing, rather than to the Manager LLC in

which Kulick holds an interest, and 2) intentionally withheld from Kulick information about the

financial status of the Manager LLCs.  *See* AC ¶¶ 144-148.

   Defendants are correct that Kulick's claims relating to the withholding of information

cannot be brought as a fiduciary duty claim because Kulick's access to information is expressly

dealt with in the Manager LLC Agreements incorporated into the Amended Complaint.  *See* AC

¶¶ 50, 56 (citing the Partnership Properties Manager LLC Agreements); Kalikow Decl. Exs. 3-11

(Manager LLC Agreements).  Pursuant to Section 12.2 of each of those agreements, the "Class A

Members shall maintain at the Company's principal place of business or at its agent's office,

separate books of accounts and records for the Company."  *See* Def. Br. at 21 n. 9 (citing the

contracts); *see also, e.g.*, Kalikow Decl. Ex. 3 at 25 (exemplar contract).  That section further

provides that "[u]pon reasonable advance notice, . . . any Member or its representatives may, at

its expense, inspect and copy the books and records described in Section 12.2(a) for any purpose

reasonably related to such Member's Interest."  Def. Br. at 21; Kalikow Decl. Ex. 3 at 25.

   To the extent Kulick tries to allege a breach of fiduciary duty related to the Individual

Defendants' withholding from him of financial information for the Manager LLCs, there is no

cognizable claim.  "It is a well-settled principle that where a dispute arises from obligations that

are expressly addressed by contract, that dispute will be treated as a breach of contract claim.  In

that specific context, any fiduciary claims arising out of the same facts that underlie the contract

obligations would be foreclosed as superfluous." *Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010).  Delaware law specifically provides that LLC members' rights to the financial records of the LLC are governed by the LLC Agreements.  *See* 6 Del. C. § 18-305(a) ("Each member of a limited liability company . . . has the right, subject to such reasonable standards (including standards governing what information and documents are to be furnished at what time and location and at whose expense) as may be set forth in a limited liability company agreement . . . to obtain from the limited liability company . . . [t]rue and full information regarding the status of the business and financial condition of the limited liability company.").

However, Kulick's access to "information relating to the financing and operations of The Partnership Properties" as a member of the Manager LLCs, *see* AC ¶ 148, expressly is addressed in the LLC Agreements for the Manager LLCs.  As a result, Kulick cannot raise a fiduciary duty claim independent of denial of his contractual right of access to records.  Additionally, because Kulick has not alleged an attempt to access records through that contractual mechanism, or a failure by Defendants to provide the records to him pursuant to it, Kulick has not alleged elements of a breach of contract claim.  *Cf. Nemec*, 991 A.2d at 1129 ("It is a well-settled principle that where a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim.").

Nonetheless, Plaintiff's Sixth Cause of Action survives in part.  In addition to alleged wrongdoing related to the financial records of the Manager LLCs, Kulick also alleges that the Individual Defendants "funneled [] funds to another corporate entity in order to render Kulick's economic interests in The Partnership Properties Manager LLCs worthless."  AC ¶ 145.  In doing so, Kulick argues that Defendants "engag[ed] in self-dealing transactions designed to avoid paying Kulick" and, presumably, to enrich themselves at his expense.  AC ¶ 147.  Defendants

argue that this conduct is permissible under the the Project Entity Agreements and, thus, cannot be the predicate for a fiduciary duty claim. *See* Def. Br. at 19-21. However, as noted above, *see supra* at 11-15, the Project Entity Agreements are not before the Court and cannot be used on a motion to dismiss to contradict the facts as stated in the Amended Complaint, which must be accepted as true at this stage of the litigation. *Siegel*, 933 F.3d at 222. As a result, at this stage, the Court will not dismiss the fiduciary duty claim to the extent it is premised on the self-dealing transactions.[4]

In sum, the Court grants Defendants Motion to Dismiss the Sixth Cause of Action only to the extent that Plaintiff cannot base the claim on misconduct relating to the withholding of financial information. To the extent the claim also asserts wrongdoing related to Defendants' alleged self-dealing, the Motion is denied.

> ### 3)   *Cause of Action Seven – Aiding and Abetting Breaches of Fiduciary Duty*

Defendants argue that Kulick's seventh cause of action, for aiding and abetting fiduciary duty breaches, fails because "[b]ecause Kulick has failed to state a claim for breach of fiduciary duty" in Causes of Action Two and Six. Def. Br. at 23. Defendants do not otherwise challenge the sufficiency of Kulick's pleading this claim. Because the Court has found that the fiduciary duty claims in Causes of Action Two and Six withstand the Motion, Plaintiff's Seventh Cause of Action also survives. Defendants' Motion to dismiss the aiding and abetting claim is denied.

## C.   *Plaintiff's Unjust Enrichment Claim States a Claim*

Kulick's Third Cause of Action asserts an unjust enrichment claim against GRE. By that claim, Kulick seeks to recover funds that wrongly were received by GRE instead of by Kulick

---

[4] Of course, even if the Project Entity Agreements were before the Court, Defendants would have to overcome the same burden as with the Second Cause of Action, namely, showing that the fiduciary duty claim is entirely duplicative of a possible contract claim. Because the Project Entity Agreements are not properly before the Court, I do not consider whether Defendants could meet that burden.

and the Manager LLCs of which Kulick is a member.  AC ¶¶ 118-119.  Defendants seek

dismissal of this claim on the basis that Kulick's entitlement to payments, along with GRE's

alleged entitlement to funds, are determined by contracts and, as such, the facts alleged cannot

support an unjust enrichment claim.  *See* Def. Br. at 16-18.  Plaintiff opposes the Motion on the

ground that while Kulick's entitlement to payments is contained in the Manager LLC

Agreements, GRE's entitlement to any fees from the Manager LLCs and the Partnership

Properties is not contained in those contracts.  *See* Opp. at 17-21.  Because it is not obvious that

the contracts properly before the Court "comprehensively govern[] the relationship" among

Kulick, the Manager LLCs, the Partnership Properties *and GRE*, and the distribution of funds

among them, the Motion must be denied.  *iBio, Inc. v. Fraunhofer USA, Inc.*, C.A. No. 10256-

VCF, 2020 WL 5745541, at *11 (Del. Ch. Sept. 25, 2020).

    Delaware law is clear that "[i]f a contract comprehensively governs the relevant

relationship between the parties, then the contract must provide the measure of the plaintiff's

rights, and any claim of unjust enrichment will fail."  *iBio, Inc.*, 2020 WL 5745541, at *11.

However, the contract must "comprehensively" govern the relationship.  If it does not, the unjust

enrichment claim will survive.  *See Stone & Paper Inv'rs, LLC v. Blanch*, C.A. No. 2018-0394-

PAF, 2020 WL 3496694, at *13 (Del. Ch. June 29, 2020) (collecting cases and noting that an

LLC Agreement did not "comprehensively govern" the relationship between the parties where

Defendants were alleged to have transferred money from an LLC without consideration and

without basis in the LLC Agreement).

    In this case, Defendants submit that the relationship among Kulick, the Manager LLCs

and GRE is comprehensively governed by the Manager LLC Agreements and the Project Entity

Agreements.  *See* Def. Br. at 17.  However, because the Project Entity Agreements are not

properly before the Court on this Motion, the Court cannot consider whether those contracts render Kulick's unjust enrichment claims duplicative.  Instead, the Court is left with only the Manager LLC Agreements, which say nothing about GRE's entitlement to funds from the Partnership Properties.  *See* Opp. at 19.  Indeed, in their Reply, Defendants argue only that the Project Entity Agreements bar the unjust enrichment claim, and do not attempt to rely on the Manager LLC Agreements.  *See* Def. Reply at 8-9.

The only contracts properly before the Court related to this issue (*i.e.* the Manager LLC Agreements) do not speak to GRE's entitlement to any funds from the Partnership Properties.  Kulick claims that GRE wrongly diverted funds that should have gone to the Manager LLCs for distribution to their members, of which he is one.  AC ¶¶ 118-124.  Because there is no contract properly before the Court that governs this relationship, the Motion to dismiss Kulick's unjust enrichment claim is denied at this stage.

### D.      *Plaintiff's Equitable Accounting Claim States a Claim*

In his Fourth Cause of Action, Kulick asserts a claim for an equitable accounting against GRE.  AC ¶¶ 126-132.  Defendants seek dismissal of this claim on the ground that such a claim is not available where "an adequate remedy at law" exists.  *See* Def. Br. at 18.  Specifically, Defendants claim that Kulick has a breach of contract remedy for any withheld funds and, therefore, the accounting claim is improper.  Def. Br. at 19.  Plaintiff responds that an equitable accounting is appropriate here where Defendants are able to "disperse funds throughout the entities comprising [GRE's] corporate structure" and Kulick may not otherwise be able to track the funds.  Opp. 20-21.  At this stage, Defendants have not shown that the claim is subject to dismissal, and the Motion is denied.

Plaintiff and Defendant both agree that Kulick claim for an accounting would survive if no adequate remedy at law existed. *See* Def. Br. at 18-19; Opp. at 20-21; *see also Schuss*, 2008 WL 2433842, at *11 ("An action for an accounting is not available when there exists an adequate remedy at law." (citing *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962)). At this stage, for the same reason that Plaintiff's unjust enrichment claim survives, the accounting claim does as well. Specifically, the Court cannot, at this stage, conclude that any wrongdoing or misappropriated funds would be recoverable at law from Kulick's contractual counterparties, as they must be to warrant dismissal of the accounting claim at the pleading stage. *See Schuss*, 2008 WL 2433842, at *11 (refusing to dismiss accounting claim where tracking funds and determining how and from whom to satisfy potential debts "may be complicated."). For those reasons, Defendants' Motion to dismiss the accounting claim is denied.[5]

### E.   *Plaintiff's Claim for a Declaratory Judgment is Dismissed*

Finally, Defendants seek dismissal of Plaintiff's Eighth Cause of Action for a declaratory judgment. *See* Def. Br. at 23-25. Through that claim, Kulick seeks an order 1) confirming his contractual entitlement to his economic interest in the Partnership Properties, 2) confirming his rights as a managing member in the Partnership Properties, and 3) requiring the Individual Defendants to indemnify him for any liabilities created by the Individual Defendants' breaches of their fiduciary duties. AC ¶ 165. Because Plaintiff has not shown that there is a dispute over

---

[5] In their Reply, Defendant argue for the first time that the accounting claim should be dismissed because Plaintiff failed to allege a fiduciary relationship between himself and GRE. *See* Def. Br at 9-10. Indeed, in the Amended Complaint, Kulick does not allege that a fiduciary relationship existed, but only that "the principals of GRE were in a confidential business relationship with Kulick." AC ¶ 128. However, the Court does not consider arguments raised for the first time in a reply brief. *In re Various Gran Jury Subpoenas*, 235 F. Supp. 3d 472, 485 (S.D.N.Y. 2017) ("The law in the Second Circuit is clear that arguments or requests for relief raised for the first time in reply briefs need not be considered." (citing *ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*, 485 F.3d 85, 100 n.16 (2d Cir. 2007))). Because Defendants failed to raise this argument in its opening brief, leaving Plaintiff unable to respond, the Court will not consider it here on a motion to dismiss Plaintiff's claim.

the first two proposed declarations, and because he has failed to respond to Defendants'
arguments regarding the third proposed declaration, the Eighth Cause of Action is dismissed.

A party seeking a declaratory judgment must demonstrate that there is an "actual
controversy" between the parties.  28 U.S.C. § 2201(a).  "The controversy must at all times
remain 'definite and concrete, touching the legal relations of parties having adverse legal
interests.'"  *Velvet Underground v. Andy Warhol Foundation for the Visual Arts, Inc.*, 890 F.
Supp. 2d 398, 403 (S.D.N.Y. 2012) (citing *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118 127
(2007)).  The Court is without authority to issue a declaratory judgment "when the parties are
asking for an advisory opinion."  *Flast v. Cohen*, 392 U.S. 83, 95 (1968).  Until the judgment is
issued, the proposed declaratory judgment must be "embedded in [an] actual controversy about
the plaintiffs' particular legal rights."  *Alvarez v. Smith*, 558 U.S. 87, 93 (2009).

Plaintiff's first two declaration requests do not present an actual controversy.  Defendants
agree that Kulick retains his original membership interest in the Manager LLCs.  *See* Def. Br. at
25 ("The gravamen of Kulick's grievance concerns whether the [Manager LLCs] acting through
a Majority in Interest of its Class A Members were permitted to cause income to be paid to SLP
instead of the [Manager LLPs], and not whether Kulick continues to have interests in the
[Manager LLCs] (which he does).").  Indeed, in the letter that Kulick claims terminated his
interests, Defendants merely stated that his interests in SLP were terminated, not those in the
Manager LLCs.  *See* Termination Letter at 2.

Plaintiff attempts to rescue these request by asserting that Defendants "have engaged in
the particularly disingenuous tactic of reassuring the Court that 'Kulick continues to have
interests in the [Manager LLCs],' while neglecting to acknowledge that Defendants have
rendered those interests *completely worthless* . . . ."  Opp. at 22 (emphasis in original) (internal

citation omitted).  Whether Plaintiff is correct or not, the value of his membership interests is the subject of at least one of his breach of contract claims (Cause of Action Four concerning the payments pursuant to the GRE Charlotte GP LLC Agreement) and in any event is not the subject of the proposed declarations; instead, he only seeks confirmation that the interests exist.  AC ¶ 165.  Because there is no disagreement on that point, Plaintiff's declaratory judgment claim is dismissed with respect to the first two of his three proposed declarations.

Plaintiff's claim for his third proposed declaration is also dismissed.  Defendants argue that Kulick has "asserted no contractual basis for indemnification or even alleged that anyone has incurred any liability."  Def. Br. at 25.  In essence, Defendants argue that there is no current actual controversy about indemnification and, thus, the declaration would not affect any person's rights.  *See* Def. Br. at 25.  The Court need not consider that argument, as Plaintiff does not respond at all to these arguments.  "It is well-settled that the failure to oppose an argument raised in a motion to dismiss is deemed a concession of the argument and abandonment of the claim." *McGee v. McGready*, No. 16-CV-4187 (NSR), 2019 WL 6341290, at *3 n. 4 (S.D.N.Y. Nov. 26, 2019).  In light of Plaintiff's failure to defend his claim for a declaration regarding indemnification, the Court deems the claim abandoned.  For these reasons, Plaintiff's Eighth Cause of Action for a Declaratory Judgment is dismissed.

## CONCLUSION

As set forth herein, Defendants' Motion to Dismiss certain of Plaintiff's claims is GRANTED IN PART and DENIED IN PART.  To summarize, Defendants' Motion is granted to the extent that Plaintiff's claim seeking a declaratory judgment (Cause of Action Eight) is dismissed.  The Motion is also granted to the extent that Plaintiff cannot assert a breach of fiduciary duty claim based on Defendants' failure to provide him financial records of the

Manager LLCs (Cause of Action Six).  Defendants' Motion is denied in all other respects.

Defendant shall file an Answer to Plaintiff's Amended Complaint on or before March 30, 2021.

The Clerk of Court respectfully is requested to close the Motion at ECF No. 21.

**SO ORDERED**

**Date:  March 10, 2021**
**New York, New York**                                      **MARY KAY VYSKOCIL**
                                                            **United States District Judge**